Gardner v. Gas & Electric Co.

HARVEY W. GARDNER, Respondent, v. SPRING-
FIELD GAS & ELECTRIC COMPANY, Appel-
lant.

Springfield Court of Appeals, February 6, 1911. Rehearing
Denied, April 7, 1911.

1. JURISDICTION: Legal Existence of Court: Appeal and Error.
The question of the legal existence of a court cannot be raised
on appeal in a cause instituted in such court.

2. DAMAGES: Loss of Profits: Mandamus: Estoppel. Plaintiff
was the proprietor of a moving picture show and defendant
manufactured and supplied electric current to plaintiff to
operate said show. Defendant discovered that plaintiff, by
means of a shunt wire, had been diverting part of the current,
so that it did not pass through the meter and upon this dis-
covery it attempted to collect for the diverted current, which
account plaintiff declined to pay. Thereupon defendant re-
fused to furnish any more current. Plaintiff then instituted
a mandamus suit to compel defendant to furnish him current and
was successful in this proceeding, the trial court finding that
defendant had waived its right to refuse to supply plaintiff
with current, for the reason it had continued to furnish plaintiff
with current for several weeks subsequent to the discovery
that the current had been diverted. About the time the decree
in the mandamus suit was rendered, plaintiff sold his moving
picture show. This suit is for damages to plaintiff because of
defendant's refusal to supply current. *Held*, that plaintiff was
not required to sue for damages in the mandamus suit, but
could maintain this separate action therefor. *Held*, further,
that an instruction that permitted a recovery of probable profits
subsequent to the decree in the mandamus suit on the theory
that plaintiff's business had been practically ruined because of
defendant's refusal to furnish current was erroneous.

3. ———: ———: Independent Action for Damages. The re-
lator in a mandamus suit is allowed, under our statute (section
2551, R. S. 1909), to recover damages in the same proceeding,
but he may limit his prayer in the mandamus suit to the issuing
of the peremptory writ and by a subsequent independent action
sue for any damages he may have sustained.

4. ———: ———: Instructions. In an action for damages
based on defendant's failure and refusal to furnish plaintiff
with electric current with which to operate his moving picture
show, it appeared that plaintiff in a prior action had obtained

a peremptory writ of mandamus compelling defendant to furnish plaintiff with current; and that about the time this writ was obtained plaintiff sold the show. An instruction given in the case covering the question of damages is examined and *held* that in so far as it authorized a recovery for the extra expense and loss of profits to plaintiff's business between the time defendant refused to furnish current and the time the peremptory writ was ordered it was unobjectionable; but when it submitted to the jury the question of the loss of profits after the defendant had again turned on the current on the theory that the business would be affected for years to come, the instruction was highly prejudicial.

5. ———: ———. Loss of profits and business are only recoverable in cases where the operation of an established business has been interrupted, or in cases where the evidence makes the loss of profits and the amount thereof reasonably certain.

6. ———: **Expenses of Business: Burden of Proof: Matters Peculiarly Within Party's Knowledge.** In a suit for damages for failure on the part of defendant to furnish electric current to plaintiff with which to operate his moving picture show, it was shown by defendant that plaintiff for some time prior to the refusal of defendant to furnish current, had diverted part of the current by means of a shunt wire, so that it was not registered by the meter. *Held*, that in estimating plaintiff's damages it was necessary to know his expenses and therefore necessary for him to show the value of the current used in his business and that the burden was upon plaintiff to show the amount and value of the diverted current and an instruction placing the burden on defendant was erroneous. Another reason given for putting this burden on plaintiff was the fact that the time he had wrongfully diverted the current was peculiarly within his knowledge.

7. **EVIDENCE: Ledger Accounts: Aiding Witness's Recollection.** Although a ledger account may not be a book of original entries, yet where the witness testified that he kept a daybook showing each day's transactions and that he had correctly copied from the daybook the items contained in the ledger, he may be permitted to use the ledger to aid his recollection.

8. ———: **Books of Original Entry: Res Gestae.** Books of original entries are admissible in evidence as part of the res gestae of the transaction which they purport to record, and the fact that they do not record transactions between the parties to the suit will not affect their admissibility.

9. **JUDGMENTS: Res Adjudicata: Finding of Facts: Collateral Issues: Mandamus.** Plaintiff had obtained a judgment in a mandamus suit, which required the defendant to furnish electric

current with which to operate his moving picture show. In the mandamus suit defendant claimed that plaintiff had for some time been diverting the current by means of a shunt wire, so that the current was not properly registered in the meter. The trial court found that plaintiff had been guilty of diverting the current in this manner but also found that defendant, with the knowledge that the current had been diverted, afterwards furnished plaintiff current and permitted plaintiff to expend money on the belief that he would be furnished current, and on that account defendant had waived its right to refuse to furnish current. In a subsequent action by plaintiff for damages for the failure on the part of defendant to furnish current, it was held that the finding of the trial court in the mandamus suit between the same parties, that plaintiff had knowingly diverted the current, was binding and conclusive on both parties. NIXON, P. J., *dissents*, and after reviewing the finding of the facts of the trial court in the mandamus suit, holds that it appears from such finding that the question of whether or not plaintiff had diverted the current by means of a shunt wire was immaterial and not necessary for the court to pass on because of defendant's estoppel; that the judgment for the plaintiff would have been the same in either event and that therefore the question of whether or not plaintiff had diverted the current was not concluded by the judgment in the mandamus suit, and was not res adjudicata in this action for damages.

10. ———: **Appeal and Error.** Where an appeal has been abandoned and a writ of error dismissed, the judgment of the trial court becomes final as to all issues presented therein.

Appeal from Greene Circuit Court.—*Hon. G. W. Goad,* Special Judge.

REVERSED AND REMANDED.

*Delaney & Delaney* for appellant.

(1) That mandamus judgment is conclusive only on application for an alias writ, or in compelling performance of mandate or in punishing for disobedience, see People v. Solomon, 54 Ill. 39; People v. Rice, 144 N. Y. 249; People v. Rochester, 76 N. Y. 294; 19 Ency. of Law (2 Ed.), 723; 26 Cyc. Law and Procedure, 485. (2) That the sale by relator before judgment abated the alternative writ, see State ex rel. v. Jasper Co., 93 Mo.

499; United States v. Boutwell, 17 Wall 604, 21 Law
Ed. 721; U. S. v. Butterworth, 169 U. S. 600, 42 Law
Ed. 873; Warner Stock Co. v. Smith, 165 U. S. 28, 41
Law Ed. 621; Cox v. U. S., 9 Wall. 298, 19 Law Ed.
579; Ex parte Dowe, 54 Ala. 258; State v. Railroad, 57
Pac. 106.   (3) Either the mandamus judgment, in an
independent suit, does conclude respondent on any
issue involved, so far as the individual is concerned
or it is conclusive on all issues litigated or which might
have been litigated.   Plaintiff can choose whichever
position he desires.   State v. Ryan, 2 Mo. App. 309, R.
S. 1909, secs. 2549, 2550, 2551, 2552 and 2554; Gilbert
v. Fish Co., 86 Minn. 365.   (4) Notwithstanding plain-
tiff's purchase or lease of an engine and generator to
furnish his own power at 322 South street, and not-
withstanding his advertisement to the public that he
was furnishing his own power independent of the de-
fendant, but was in fact tapping our current, affords but
one inference and it is the only reasonable inference
in the light of all the evidence in this record, to-wit:
that he was purloining current at 305 South street by
means of the shunt wire.   And yet, while this latter
issue was gravely submitted as the only one for the
solemn consideration of the jury, in the learned and
exhaustive instructions of the court, *nisi*, said honorable
court excluded from their consideration facts which ir-
resistibly warranted such inference of knowledge. State
v. Lehman, 175 Mo. 619; Franklin v. Railroad, 97 Mo.
App. 473; Buckley v. Kansas City, 95 Mo. App. 188;
Kenneth Co. v. Bank, 103 Mo. App. 613; State v. Schnel-
ter, 181 Mo. 173.

*Roscoe C. Patterson* and *White & White* for re-
spondent.

(1) No point is made in objection to the measure
of damages as directed in plaintiff's instruction No. 2,
but we cite authorities in support of the position taken,
that plaintiff is entitled to recover the damages caused

by the loss of his business as shown by the proven profits, together with the extra expense incurred in trying to save his business. As to the loss of business and profits: 13 Cyc. 57, 58, 59; Gildersleve v. Overstoltz, 90 Mo. App. 531; Popskey v. Munkwitz, 68 Wis. 322; Sheppard v. Gas Co., 15 Wis. 330; Wakeman v. Wheeler, 101 N. Y. 205; Western Union v. Austlet, 115 S. W. 624; Chapman v. Kirby, 49 Ill. App. 211. As to the expense incurred in trying to save the business: Railroad v. McGrew, 104 Mo. 282; Dietrich v. Railroad, 89 Mo. App. 36; Field on Damages, 19; Bilhimer v. Railroad, 119 S. W. 502. (2) It is claimed that on the finding of facts in the mandamus suit, the peremptory writ was improvidently ordered. If that was true it could not affect the validity or force of the judgment in this collateral proceeding. At most it was error, which cannot avail the defendant now, but must have been taken advantage of on appeal. Rosenheim v. Hartsock, 90 Mo. 365; McDonald v. Frost, 99 Mo. App. 44; 23 Cyc. 1090, 1095, 1100; Bedford v. Sykes, 168 Mo. 14.

GRAY, J.—This case is in this court on appeal by the defendant from a judgment of the circuit court of Greene county.

In May, 1907, the plaintiff was conducting a moving picture show at 305 South street, in Springfield. The defendant at said time was and now is a corporation organized under the laws of this state, and operating an electric light and power plant in said city. In May, 1907, a contract was entered into between the plaintiff and the defendant, by the terms of which the defendant agreed to furnish plaintiff light and electric current necessary to operate his said picture show. The defendant furnished the light and power under the contract, but in February, 1909, became suspicious that plaintiff was using more current than he was paying for. An investigation disclosed the fact that plaintiff was using a device known as a "shunt wire," by which

the current of electricity was being diverted around the meter so that the meter installed to measure the current of electricity did not correctly register the same. When this was discovered, the defendant instituted proceedings to collect $1096, being the amount defendant claimed plaintiff owed it for the electric current diverted as aforesaid. The plaintiff refused to pay the bill, and defendant thereupon refused to furnish plaintiff any current. The plaintiff sued out an alternative writ of mandamus to compel defendant to furnish him the current, and upon final hearing the plaintiff was successful, and the peremptory writ issued. The defendant appealed to the St. Louis Court of Appeals, but neglected to give an appeal bond and the appeal was abandoned. Thereupon, the defendant sued out a writ of error but failed to give notice thereof, and on motion such proceeding was dismissed.

After the mandamus was made peremptory, the plaintiff instituted this suit to recover damages from the defendant for its failure to furnish electric current under the contract, alleging his damages in the following language:

"Plaintiff says by reason of the premises that he has been damaged by the defendant; that on and after cutting of connection and refusal to furnish service on the —— day of March, as aforesaid, the plaintiff endeavored to furnish himself with light and power from other sources by hiring a traction engine, employing engineers and other employees for such service, and undertook by such means to furnish himself with light at a great expense, vastly in excess of the cost of the power furnished by the defendant at its usual rates and at the rates aforesaid; that the plaintiff continued to attempt to supply service in the manner aforesaid for and after the —— day of March, as aforesaid, until the 5th day of June, 1909, and that the expense thereby incurred in excess of what his light and power would have cost if furnished by the defendant at its usual

rate was thirty-five dollars per week. Plaintiff further says that although he attempted to supply himself with light and power in the manner aforesaid that such light and power were insufficient and inadequate, by reason whereof his pictures used in the conduct of his moving picture show were dim, unsatisfactory to such an extent that his custom fell off, the attendance diminished so that he could no longer do a profitable business and that he could not conduct the said business except at a loss, and finally, by reason of the diminished attendance and the increase of expense he was obliged to close down and stop the said business on or about the 5th day of June, 1909; that his business when furnished with proper light and power had been extremely profitable, such that the plaintiff made as a profit in the conduct of the same about five thousand dollars per year over and above all expenses, and could make a like amount if said power and light had been furnished by the defendant, but by reason of the acts of the defendant as aforesaid he incurred the expense aforesaid and his business was diminished, run down and absolutely ruined as aforesaid at the said premises.

"Wherefore, by reason of the premises, the plaintiff says he is damaged by the acts of the defendant as aforesaid in the sum of six thousand dollars, for which he asks judgment."

The answer, in addition to a general denial, alleged affirmatively the execution of the contract and the organization of the defendant; that the plaintiff entered into the contract with the intent to defraud defendant, and with the fixed intent to divert and misappropriate a portion of the current necessary to the operation of his business, and that plaintiff, in furtherance of said design and fraudulent intent, installed on his premises the shunt wire, and thereby diverted a part of the current before it passed through the meter, and thereby used and consumed much electric current for which he did not pay, and the same was installed

and used for the purpose of cheating and defrauding the defendant; that on or about the —— day of March, 1909, the plaintiff also installed a moving picture show at 322 South street, in said city, and advertised that he was generating his own power and electricity for the operation of his said plant and show at said No. 322 South street, whereas, in truth and in fact, he was using the current of the defendant at said place without its knowledge or consent, and with the intent to defraud defendant, and thereby actually did defraud the defendant; that defendant cut off the service at 305 South street, and that it did so because plaintiff was indebted to it for the current diverted and refused to pay the indebtedness or any part thereof, and because of the fraudulent intent of plaintiff at the time of entering into the contract and of his fraudulent act and conduct after the execution of said contract and relating thereto.

The defendant further answered: "That on the —— day of ——, 1909, the so-called Division No. 2 of the circuit court of Greene county, Missouri, in a proceeding in the name of the state at the relation of the plaintiff herein, rendered a pretended judgment against this defendant, but defendant says that said pretended judgment did not find and adjudge as stated by plaintiff that defendant had wrongfully disconnected its said wires, and wrongfully refused to furnish power to plaintiff, and did not order that defendant restore said connections and resume the furnishing of power and current to plaintiff as alleged in petition."

It was further alleged that the pretended judgment rendered by said circuit court of Greene county, was void because the creation of said court and the appointment of the judge thereof was unconstitutional, and that said court had no legal existence.

The plaintiff filed a motion to strike out a part of the answer, but the same was never passed on, so far as

154 App.—43

the record discloses. The trial resulted in a judgment in favor of the plaintiff in the sum of $3000.

The first claim made by the appellant is that the cause should be transferred to the Supreme Court, on the ground that a constitutional question is presented. The so-called constitutional question relates to the existence of said Division No. 2 of said court. The question of the legal existence of the court cannot be raised on appeal in a cause instituted in such court. [State v. Searcy, 46 Mo. App. 422, 111 Mo. 236, 20 S. W. 186.]

The record in the mandamus case was introduced in evidence, and it appears therefrom that the plaintiff presented to the court an application for writ to compel the defendant to furnish power under the contract; that the court heard the evidence, including all that introduced by defendant tending to prove that plaintiff had knowingly diverted the current, and by the plaintiff in defense of said charge. There was enough in the finding of the court in the mandamus case to show that the court found that plaintiff had knowingly diverted the current, as charged by the defendant, but judgment was rendered in favor of the plaintiff or relator in that suit, and as the appeal was abandoned and the writ of error dismissed, the judgment became final as to all issues presented therein. [26 Cyc. 486; Merrill on Mandamus, sec. 315.]

In the mandamus proceeding, the relator asked for no damages and none were allowed. The defendant now claims that the damages if any, should have been assessed in that proceeding, and that the present action cannot be maintained, and in any event for more than nominal damages.

In many of the states, statutes have been enacted, allowing the relator to recover his damages in the mandamus proceeding. [26 Cyc. 484; McClure v. Scates, 64 Kans. 282, 67 Pac. 856; People v. Supervisors, 28 N. Y. 112; State ex rel. v. McGregor v. Young, 61 N. W. 165; Hollister v. Donohoe, 92 N. W. 12.] And in

this state we have such a statute.    [R. S. 1909, sec. 2551.]

The New York statute is similar to ours, and the court of appeals of that state has held that the relator may recover the damages in the mandamus proceeding, or he may institute an independent suit therefor.    [People ex rel. Goring v. Wappingers Falls, 151 N. Y. 386.]    In passing upon the question, the court said: "It is the evident intent of the Legislature that a relator who has secured his final order for the peremptory writ ought not to be driven to his action for damages and subjected to the delays incident to a second litigation, but if he so elects the court must award him his damages in the pending proceeding."

In many cases the relator would be very anxious to secure the peremptory writ at the earliest possible date, and would not want to delay the proceedings necessarily caused by submitting the collateral issues of damages and having them disposed of before the final writ was issued.

We believe the relator had the right in the mandamus proceeding to limit his prayer for relief to the issuing of the peremptory writ and did not thereby lose his right to institute the independent proceeding to recover the damages sued for in this case.

The plaintiff was permitted to examine a book called his "ledger," and to testify from it as to his receipts and expenditures.    The testimony showed that the entries in the book were made at the end of the month and copied from the day book.    The defendant claims that in as much as the items in the book did not refer to transactions directly between the plaintiff and the defendant, the book was not admissible, and if wrong on this proposition, yet the ledger was not a book of original entries, and was therefore not admissible in evidence.    The plaintiff testified that he kept a day book showing the transactions of each day, and at the end of the month he copied them into the ledger.

There is a difference between offering the books in evidence and permitting a party to use the same in aid of his recollection. [Ward v. Transfer & Storage Co., 119 Mo. App. 83, 95 S. W. 964; State v. Carpenter, 216 Mo. l. c. 449, 115 S. W. 1008.] The plaintiff testified to the amounts received from the sale of tickets during the year previous to the time defendant refused to furnish him current. In aid of his recollection on the subject he was permitted to examine his ledger after he had testified that he had correctly copied from the day book the items contained therein. We can see no objection to the action of the court in permitting him to use the book to aid his recollection.

Books of original entries are admissible in evidence as a part of the *res gestae* of the transaction which they purport to record. [Gubernator v. Rettalack, 86 Mo. App. 184.]

There are numerous transactions in any business which it would be impossible for the parties to carry the details thereof in their minds, and therefore, books are kept and entries are made at the time such transactions are had. They are usually made at a time when no motive existed for falsifying, but simply for the purpose of preserving the correctness thereof. In such cases the books of original entries are admissible in evidence and the fact that they do not record transactions between parties to the suit, will not effect their admissibility.

This court, in the case of Morrow v. Railroad, 140 Mo. App. 200, 123 S. W. 1034, held that books of a miller were admissible to establish his loss of profits caused by a failure of a common carrier to ship repairs within a reasonable time. We are of the opinion that the court did not err in permitting plaintiff to refresh his memory by the use of the ledger. We are also of the opinion that plaintiff's books of original entries were admissible in proof of loss of profits.

In behalf of the plaintiff the court gave the jury the following instructions:

"No. 3.   You can only consider the question of whether plaintiff used current for which he did not pay, and the amount so used, if any such amount has been proved to your reasonable satisfaction to have been so diverted and used, in determining the expense of running his said business as compared with what the expense would have been had said current not been so diverted, and consequently its effect upon the profits of his said business; and the burden is on the defendant to show by the preponderance of testimony that current was so diverted, and the amount of current so diverted.

"No. 5.   While you are instructed that plaintiff's damage, if any, accrued between the 30th day of March and the 5th day of June, 1909, you should consider the loss of plaintiff's business at the latter date, if it was lost, and the probable value of said business from the profits which you believe from the evidence certainly would have accrued to plaintiff in the future if defendant had continued to furnish him electrical service."

The defendant furnished current for plaintiff until the 30th day of March, 1909, and the peremptory writ of mandamus was ordered on June 14, 1909, but previous to the issuing of the peremptory writ and on the 5th day of June, 1909, plaintiff sold his business and thereafter was not interested in the premises.

It will be noticed that instruction No. 5 submitted to the jury the issue of the total loss of plaintiff's business on account of the defendant's failure to furnish him current.   How can it be said from the evidence that the total loss of the business was an issue for the jury?   If the defendant wrongfully violated its contract and refused to supply current to operate plaintiff's business, then plaintiff was entitled to recover damages caused by the suspension of his business during the time defendant refused to furnish current.

The defendant gave no appeal bond in the mandamus proceeding, and therefore, plaintiff was entitled to the peremptory writ and the service thereof, and we cannot presume that the defendant would have refused to obey the same. Instead of asking for the service of the peremptory writ, the plaintiff saw fit to dispose of his business, and now claims a total loss thereof because the defendant refused to furnish him current during the months of April and May, 1909.

There is nothing in the evidence to justify the claim that if plaintiff had resumed his business after defendant was ordered to deliver him current, he could not have done so with as much profit as he had enjoyed in the past. He testified that between March 30th, and June 5th, and on account of his inability to get power, the attendance dropped off until he could not operate at a profit. But how could he tell that he would not operate at a profit when the objectionable features to his show had been removed? The authorities are collected and thoroughly discussed by the Presiding Judge of this court in the Morrow case above cited. From an examination of that case and the authorities therein cited, it will be seen that loss of profits and business are only recoverable in cases where the operation of an established business has been interrupted, or in cases where the evidence makes the loss of profits and the amount thereof reasonably certain.

The instruction complained of in this case, in so far as it authorized the recovery for the extra expense and the loss of profits to plaintiff's business between the time defendant refused to furnish current and the time the peremptory writ was ordered, is unobjectionable. [Morrow v. Railroad, supra.] But when it submitted to the jury the difference between plaintiff's receipts after such time, and after the defendant had again turned on the current, and what they would have been had the current never been turned off, it certainly entered into the field of the wildest speculation. There

was no limit fixed to the time. By the instruction the court told the jury there was evidence that plaintiff's business had been ruined, and that even though he started up again after the defendant had furnished him current, that the business would be effected for years to come on account of the defendant's refusal to furnish him current between March 30th and June 5th. The instruction was highly prejudicial to the defendant and must cause a reversal of the judgment.

Instruction No. 3 is wrong also. If the jury found from the evidence that the plaintiff diverted the current so as to cheat the defendant out of a part of the sum he owed it therefor, then the burden was not upon the defendant to show the amount and value of the current diverted. The burden was upon the plaintiff to prove the loss of his profits, and in doing so he was rightfully permitted to show his receipts and expenditures for a reasonable time previous to the time defendant refused to furnish him current. [Morrow v. Railroad, supra.] In order to show his expenses it was necessary for him to show the amount and value of the current used in his business. When the evidence showed that only a part of the current passed through the meter, and that other was used, then it was his duty to show the amount and value thereof.

There is another reason why the burden was upon the plaintiff. If he wrongfully diverted the current, the time he did so was a matter peculiarly within his own knowledge.

As the case must be retried, there is another matter of evidence which should be considered. The plaintiff offered in evidence the files and records in the mandamus proceeding, except the finding of facts of the trial court. The defendant offered the finding of facts, but they were excluded on the objection of plaintiff. In the finding of facts the court found that plaintiff had knowingly diverted the current, but with knowledge that the same had been done defendant afterwards furnished plaintiff

current. The evidence offered by the plaintiff relating to the mandamus case simply showed that the court had directed the defendant to furnish current, and from this plaintiff was in a position to urge before the jury that the court had found that plaintiff had diverted no current.

As we have heretofore stated, the proceedings in the mandamus case are not subject to collateral attack. One of the issues in that case was whether the plaintiff had knowingly diverted current, and that issue was found by the trial court in favor of the defendant. The evidence of such finding was the finding of facts in the case. It is true on appeal the appellate court is not bound by the finding of facts of the trial court in an equity case as in a law case, but the statute applies both to legal and equitable actions. [Miller v. McCaleb, 208 Mo 1. c. 573, 106 S. W. 655.]

The plaintiff in the mandamus case secured his judgment because the court found a certain state of facts to exist. In plaintiff's instructions to the jury in this case, the court told the jury that the mandamus proceeding was conclusive as to all the issues found in plaintiff's favor, but refused to permit the defendant to prove what issues were found in its favor. The parties were in court in the mandamus case, and they then and there submitted to the court the question as to whether the plaintiff had wrongfully diverted the current, and the finding of the court upon that issue was as much binding on the parties, as any other issue determined in the case.

There are some other errors complained of, but it will not be necessary to consider the same. The judgment of the trial court will be reversed and the cause remanded. All concur.

## ON REHEARING.

GRAY, J.—A motion for rehearing has been filed by the respondent, and his main contention therein is that this court is wrong in holding that the issue as to the use of the shunt wire was concluded by the judgment in the mandamus case. The mandamus suit was instituted for the purpose of compelling the defendant herein to furnish current to the plaintiff herein. In its return the defendant alleged that the plaintiff had knowingly used a shunt wire for the purpose of diverting the current around the meter, so that he would receive a large quantity of current without paying for the same. The plaintiff denied that he had used the shunt wire or diverted the current. The trial court in the mandamus case heard the evidence of the parties upon the issue. The court found that plaintiff had knowingly diverted the current, but held against the defendant on the theory that defendant, knowing that plaintiff had so diverted the current, entered into subsequent contracts and permitted plaintiff to expend sums of money, and on that account, defendant had waived its right to refuse to furnish current.

In order for the court to find against defendant in the mandamus case, the court had to find that defendant knew that plaintiff had diverted the current. If the defendant did not have that knowledge, then the fact that it entered into a contract and permitted plaintiff to expend money would not have estopped it. The whole foundation of the court's judgment was that plaintiff had knowingly diverted the current, and defendant with that knowledge, subsequently acted and conducted itself toward plaintiff so that it was estopped.

We believe the correct rule to be used in measuring the effect of a former adjudication is stated by the Kansas City Court of Appeals in Paving Company v. Field, 132 Mo. App. 628, 97 S. W. 179, as follows: "Where the two actions present the same parties, the same subject-

matter and the same claim or demand, a judgment in the first action, if rendered on the merits, constitutes an absolute bar to the second action. 'It is a finality as to the claim or demand in controversy concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand but as to any other admissible matter which might have been offered for that purpose.' But when the claim or demand in the second suit differs essentially from that merged in the former judgment the issues peculiar to it remain unaffected by the judgment, and only those issues common to both causes which were actually litigated in the former suit becomes res adjudicata by the judgment rendered therein."

In the present suit, the plaintiff alleged that the defendant wrongfully refused to furnish him current, and his action is for damages on account thereof. The defendant answered that the plaintiff was not entitled to maintain the suit for damages, and that it was justified in refusing current because of the conduct of the plaintiff in his effort to defraud the defendant, as above stated. The plaintiff replied that that issue and all other issues set out in defendant's answer, were litigated and determined against the defendant in the mandamus case. The findings of fact show that the issue relating to the shunt wire was not found against the defendant in the mandamus case, but in its favor. If it had been found in favor of the plaintiff, then undoubtedly it would have been conclusive on the defendant in this case. But because it was found in defendant's favor, it is claimed it is not binding.

In Gerbig v. Bell, 126 N. W. 871, the Supreme Court of Wisconsin said: "In trials it frequently happens that the litigant who recovers judgment is defeated on certain issues that are tried. As to any issue that is tried and determined by the finding of a court or the verdict of a jury, the final judgment rendered sets the question at rest. In a subsequent action to try title to the land,

the court would inquire what issues were raised and tried in the trespass suit and how such issues were decided, and, as to such issues as were decided, the former action would be conclusive."

We adhere to the original opinion on this point, and the motion for rehearing will be overruled.

*Cox, J.,* concurs; *Nixon, P. J.,* files dissenting opinion.

## DISSENTING OPINION.

NIXON, P. J.—I am unable to concur in the majority opinion as to the finding that the fact as to the use of the shunt wire was concluded by the judgment in the mandamus case. As stated in the majority opinion, "Plaintiff offered in evidence the files and records in the mandamus proceeding, except the finding of facts of the trial court. The defendant offered the finding of facts, but they were excluded on the objection of the plaintiff. In the finding of facts the court found that plaintiff had knowingly diverted the current, but with knowledge that the same had been done, defendant afterwards furnished plaintiff current." From this the court in the majority opinion concluded that "the parties were in court in the mandamus case, and they then and there submitted to the court the question as to whether the plaintiff had wrongfully diverted the current, and the finding of the court upon that issue was as much binding on the parties, as any other issues determined in the case."

This portion of the majority opinion I find myself unable to approve. A finding of facts was made by the court in the mandamus case separate from the judgment and this separate finding contains the following statement: "This shunt wire was found in the afternoon of the 8th day of February, 1909, attached in such a manner that current would flow over it when relator's moving picture machine was in operation, but said wire

was removed by relator about six o'clock the same afternoon. The evidence does not disclose how long this shunt wire had been attached as described; neither does it show the amount of current relator had received by means of the shunt wire, which said current was not measured by the meter nor paid for by relator. The court further finds that current had thus been diverted around the meter by means of said shunt wire with the knowledge and consent of relator. The court also finds that after the removal of the shunt wire at the premises at 305 South street on the 8th day of February, 1909, there is no evidence of any effort upon the part of relator to defraud respondent in any way or to fraudulently appropriate any electric current." The judgment, however, made this finding only: "On the hearing of this cause upon the alternative writ of mandamus heretofore issued and the return thereto and the evidence which was submitted to the court, the court finds the issues in favor of Harvey W. Gardner, relator." Then follows the order for a peremptory writ of mandamus.

From this statement of facts, it is obvious that while the defendant in the mandamus suit pleaded the use of the shunt wire as a defense, judgment was nevertheless rendered in favor of the plaintiff in said suit, although he may have used said shunt wire as a matter of fact. The question upon which the case finally turned, as shown by the finding of facts, was that the defendant, after discovering the shunt wire on the 8th day of February, 1909, continued to furnish electric current to the relator as usual at his picture show at 305 South street, presented bills each week as had previously been done which bills were promptly paid by relator up to the date when the current was cut off. From this finding of facts, the court concluded an estoppel in pais existed as against the present defendant and judgment accordingly went for the present plaintiff. From this it will be seen that the existence or non-existence of the shunt wire in the mandamus case was not a pivotal point. The

court having found that the present defendant by its conduct in the mandamus case was estopped to deny the question of the use of the shunt wire, its existence or non-existence became immaterial, and whether the fact existed or not, the rights of the parties were the same in law, and a judgment for the present plaintiff would follow as a matter of law irrespective of the existence of such facts. It therefore follows that the use of such wire, or its existence or non-existence was not concluded by the former litigation. As to whether it was used or not was a collateral issue, not essential to be determined, and hence the question of fact did not become res adjudicata by reason of the mandamus judgment. This is true although the question may in fact have been actually passed upon by the court. So far as the question now under consideration is concerned it is quite immaterial; the essential matter is, was it necessary for the court to pass upon it? [Ridgley v. Stillwell, 27 Mo. 128; Fish v. Lightner, 44 Mo. 268; 23 Cyc. 1309.] In order to show by evidence aliunde, as is sought to be done in this case, that the judgment did conclude the present matters as to the use of the shunt wire, it must appear not only that this question was properly in issue but that the judgment necessarily involved the determination of the use or non-use of the shunt wire. [Hickerson v. City of Mexico, 58 Mo. 61; Chauhape v. Parke, Davis & Co. (N. Y.), 24 N. E. 185; Kashman v. Parsons (Conn.), 39 Atl. 179; Crum v. Rea (Ind.), 42 N. E. 1033; Child v. Morgan (Minn.), 52 N. W. 1127; Lillis v. Emigrant Ditch Co. (Cal.), 30 Pac. 1108; Kerr v. Blair (Tex.), 118 S. W. 793; Brown v. McKie (N. Y.), 78 N. E. 65; 23 Cyc. 1309-1313; 1 Freeman on Judgments, sec. 271.]

Except as to the paragraph hereinbefore referred to, I fully concur in the majority opinion.