JAMES G. DANIEL, RESPONDENT, v. PHILLIPS PETROLEUM CO. ET AL.,
APPELLANT.—73 S. W. (2d) 355.

Kansas City Court of Appeals.   June 11, 1934.

*Madden, Freeman & Madden* and *Sebree, Sebree & Shook* for respondent.

*McCune, Caldwell & Downing* for appellants.

SHAIN, P. J.—In the case at bar, respondent who was the plaintiff and will hereinafter be so designated, brought this action for damages against the appellants, defendants below, so designated hereinafter, predicating his claim for damages in two counts, to-wit: One for false arrest and the other for malicious prosecution. At the conclusion of the evidence, plaintiff elected to stand on the count for false arrest.

The evidence discloses that the plaintiff, together with one William Kitchen, had driven from plaintiff's home at Glasgow, Missouri, to Kansas City, Missouri on a pleasure trip. Kitchen it appears furnished the car and the plaintiff was to pay for the gasoline and oil on the trip.

On the way home the plaintiff and his companion stopped for service at a filling station, the property of the defendant company, a corporation. The filling station, at the time, was being operated for the defendant company by its agent, Frank T. Reilly defendant herein. Defendants allege that Reilly was operating on a commission basis.

The plaintiff and his companion reached this station, situate near the intersection of Linwood Boulevard and 31st Street, at about nine P. M. on August 17, 1931, and called for gas service. While Reilly was serving their car, the plaintiff and his companion went to the toilet, the entrance to the toilet was through the office wherein was a desk and a money drawer. The young men returned from the toilet and plaintiff started to pay for the service, when his companion interfered stating that he had the exact change.

It appears in evidence that Reilly's wife and step-daughter had driven to the station and were in a position to see into the office from where they were sitting in their car. After plaintiff and his companion had gone, Reilly's wife asked him about his money. It appears from the evidence that, prior to being called to serve plaintiff's car, Reilly had taken the station money out of his work clothes and laid it loose in an open money drawer preparatory to transferring same to his other clothes. Upon inquiry from his wife, he went into the station and exclaimed, "it is all gone." His wife then in-

formed him that the men he had just served took the money. Reilly, thereupon, gave chase in his car, overtook the young men and stopped them on the road and demanded the money he charged they had taken, amounting to about thirteen dollars ($13). Upon the boys protesting their innocence, Reilly still charged them with taking same and requested that they return to the station, which they did, closely followed by Reilly in his car. When they arrived at the station, the defendant's wife identified only Kitchen. Thereafter, the police station was called by Reilly and it was reported that some money had been stolen from the station; that two boys were there and asked that someone be sent out to investigate. The police came and plaintiff and his companion after some parley were taken to the police station and afterwards were incarcerated in the hold-over or jail with other prisoners. On the following morning, the young men were placed in what is known as the show-up room for criminals and were questioned by officers. It appears that when the case of the young men was called in court, an attorney for the Phillips Petroleum Company, defendant herein, after some inquiry refused to prosecute and the case was dismissed.

The plaintiff's petition conforms to the usual pleadings in false imprisonment cases and the defendant, Phillips Petroleum Company, files its separate answer pleading general denial and following with:

"Defendant further alleges and states that immediately after plaintiff and his companion, William Kitchen, left the filling station referred to in the petition, defendant Reilly's wife and daughter who had been present at the filling station premises stated to defendant Reilly that they had seen one of the two, plaintiff or said Kitchen, furtively take a sum of money, thought to be approximately thirteen dollars ($13) from the cash register in said filling station, and whatever action said Reilly took thereafter was taken in the belief that a crime had been committed, and neither this defendant nor its executive or managerial officers had any knowledge of any action taken by said Reilly or by Don Carlos until many hours after whatever action they took had been completed."

The defendant Reilly filed a separate answer pleading a general denial and following with:

"Defendant further alleges and states that immediately after plaintiff and his companion, William Kitchen, left the filling station referred to in the petition, defendant's wife and daughter who had been present at the filling station premises stated to defendant that they had seen one of the two, plaintiff or said Kitchen, furtively take a sum of money, thought to be approximately thirteen dollars ($13) from the cash register in said filling station, and whatever action said Reilly took thereafter was taken in the belief that a crime had been committed."

On the issues thus made up, a trial was had by jury resulting in a verdict for the plaintiff and against both defendants for twenty-five hundred dollars ($2500) compensatory and twenty-five hundred dollars ($2500) punitive damages. Judgment was entered to conform to the verdict and a separate judgment was entered as to each defendant; the defendants filed separate motions for a new trial and the court overruled each motion; the defendants filed separate affidavits for appeal and the cause is here on appeal under the conditions stated above. The appellants present but one brief.

Under head of "statement," both sides, in the briefs, present long drawn out arguments based upon the writer's interpretation of the evidence from the standpoint of the respective evidence produced in behalf of the side of the cause represented. We would urge the practice of a plain and concise statement of the facts free from argument.

The defendants' assignment of errors is notable for the fact that there are many general assignments of error, but with only a few direct specifications of error that are made specific as to reasons therefor, or with reference given as to where matters complained of could be found in a record composed of 462 pages.

We, to the end of classifying, embrace in paragraph form as per heading and subheading what defendants present under "Points and Authorities," as follows:

"I. Defendants having at all times exculpated plaintiff Daniel of any guilt or blame cannot be held liable for his arrest by the police.

"II. There was no actionable arrest or detention of plaintiff Daniel prior to the action of the police officers in taking him to the police station.

"II-A. Even if there were a technical arrest prior to the police officers taking plaintiff to the police station, the verdict is excessive as to any damages suffered thereby.

"III. Reilly's mere calling of the police and reporting the facts to them does not render defendants liable for whatever the police subsequently decided to do.

"III-A. Reilly's wife and daughter, having definitely identified Kitchen alone as being guilty of the theft and having exculpated plaintiff, the action of the police in taking plaintiff into custody was clearly for their own purposes and on their own responsibility.

"IV. Any statements or requests by Reilly for the arrest of plaintiff Daniel, if made, were not in the scope of his employment and the Phillips Petroleum Company is not liable therefor.

"IV-A. Plaintiff admitting that Reilly had clearly stated that he had no authority to act for the corporate defendant, his words or actions cannot be taken as being those of the corporation.

"IV-B. Mrs. Lela Reilly and her daughter, Beatrice Morris, not being employees of the Phillips Petroleum Company, no liability can

154

be found against the corporate defendant by reason of their acts or statements.

"V. There was no ratification by the Phillips Petroleum Company of the arrest of plaintiff.

"V-A. The telephone conversation with station supervisor Don Carlos cannot avail to sustain liability upon the corporate defendant. There was no evidence of any authority on his part to instigate a prosecution or ratify an arrest.

"VI. There was no evidence to justify the award of punitive damages.

"VII. Regardless of the propriety of allowing punitive damages as against Reilly, there is nothing in the case to justify the imposition of punitive damages as against Phillips Petroleum Company.

"VIII. The verdict and judgment for punitive damages is excessive.

"IX. The verdict for compensatory damages is excessive.

"X. The form of verdict and the instruction with reference thereto are erroneous as not distinguishing between Reilly and the corporate defendant as to awarding punitive damages."

Proceeding to classify what is presented above, *arguendo* and otherwise, we conclude that when boiled down the defendants are making claim that there is no liability, for the reason that there was reasonable cause for the arrest; that no liability is attached to the defendant company by reason of acts of its agent Reilly, for the reason that same did not come within the scope of his authority; that there is no evidence upon which to base punitive damages; that the verdict is excessive; that no liability attaches by reason of the acts of defendant's wife and stepdaughter nor for any act of the police, and lastly, that in the conduct of the trial there was presented a situation wherein the liability of one defendant differed from the liability of the other defendant and therefore separate forms of verdict, especially upon the issue of punitive damages, should have been given.

As to the matter of liability, there is certainly shown a detention or arrest when the defendant Reilly overtook the plaintiff and his companion and stopped them on the highway and had them to return to the station. There certainly was an arrest when plaintiff and his companion were taken in charge by the police. The fact that the young men did not make active resistance does not preclude the fact of arrest. Their detention was the result of a direct charge of theft. In the first instance, charge was made by defendant Reilly as to both. The fact that Reilly's wife did not identify the plaintiff herein does not render the detention of this plaintiff as voluntary on his part and the evidence to the effect that Reilly said to the police, whom he called, "Well, take them on to the station," and added that he would be down and prosecute them and the fact that the boys were taken

and incarcerated in jail, all presents evidence from which the jury was justified in finding that the arrest was at the instance and request of defendant Reilly. The fact as shown by the evidence, that defendant Reilly referred the matter to officials or agents of the defendant company, who refused to prosecute, and the fact, as shown, that defendant Reilly did not prosecute the case, when taken together with the fact that the plaintiff at all times maintained that he was innocent, presents evidence to sustain a finding by the jury that the arrest was a false arrest. [Tiede v. Fuhr et al., 264 Mo. 622, 175 S. W. 910; Furlong v. German-American Press Assn., 189 S. W. 385; Cooper v. Johnson et al., 81 Mo. 483.]

The defendant company presents that no liability attaches to it, by reason of any act of defendant Reilly. It is presented that Reilly was running the service station on a commission basis. It is further presented that the acts of Reilly, in what he did in the matters herein involved, were not in line of his duty as the agent of the defendant company. Based on these reasons, the defendant company claims that no liability is attached to it. The defendant company presents that it did not ratify the act of defendant Reilly.

The Phillips Petroleum Company, defendant herein, is a corporation operating largely in the sale of gasoline and oils. The organization of the company presents an extensive system of supervision. There is a regional manager over assistant managers, who are in turn over station supervisors, who are in turn over station agents. Above all in authority, is a chief located at Bartlesville, Oklahoma. The money taken in by station agents for the sale of gasoline and oil belongs to the Petroleum company. The evidence given by defendants' witnesses is to the effect that a station agent has a duty and authority to keep the company's money safe, but no authority, on behalf of the company, for getting the money back from a thief if stolen and no authority or duty in reference to prosecution if the company's money is stolen from the agent.

Defendants' testimony is to the effect that no official, down the line below the chief at Bartlesville, has any duty or power to prosecute for theft. The testimony of defendants is to the effect that a station agent when robbed is limited in power to but one course, to report to his superior and that communication must be had with the chief at Bartlesville and consent had from said chief before any action of prosecution can be had to arrest a thief, who should steal the company's money from its agent. It is the theory of the defense that any station agent, who presumed to apprehend and detain a thief, that had stolen the company's money in the custody of said station agent, was acting beyond the scope of said agent's authority and that any wrongful act committed by said agent in taking such steps to protect the company's money, which it was said agent's duty to keep with safety, could place no liability on the company.

Conceding that the agreed policy of the company is as stated, the question arises as to whether or not a third person suffering wrong, if any, as is alleged to have been suffered by plaintiff, would have recourse upon the employer.

The question involved must be determined by the questions of whether or not the defendant Reilly was the agent of the defendant company and if so was he acting within the scope of his authority. That Reilly was the agent of the defendant company seems not to be challenged. The question of whether or not defendant Reilly was acting in the scope of his authority is the issue presented. The question involved is generally one for the jury. However, there may be presented conditions showing clearly that the act of the agent departs so markedly from the course of his master's business that the question becomes one for the court. [State ex rel. Gosselin v. Trimble et al., 41 S. W. (2d) 801.]

The above case was certified to the Supreme Court from this court. This court held with the trial court below in declaring that the servant, a cab driver for the defendant company, was not acting within the scope of his authority in assaulting another cab driver. The opinion of this court is reported in 29 S. W. (2d) 186. In the opinion by BARNETT, C. J., quoted from Haehl v. The Wabash Ry. Co., 119 Mo. l. c. 339, 24 S. W. 737, as follows:

" 'The principle of *respondeat superior* applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such case whether the injury with which it is sought to charge him is the result of negligence, unskillful or of wrongful conduct, for he must choose fit agents for the transaction of his business. But if his business is done, or is not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is the purely personal wrong of the servant, for which he, and he alone, is responsible.' "

The case of Gosselin v. Trimble, supra, is found cited in defendants' brief and as the rule as to "*respondeat superior*" therein quoted is so universally accepted, we need not comment further on a long line of citations on that point found in the briefs herein.

From the evidence in the case at bar, the inference can be drawn that the plaintiff was arrested and incarcerated in jail as the direct result of the act of defendant Reilly, the agent of and the custodian of money belonging to the defendant company.

We conclude, therefore, that the facts present an issue of fact for the jury and a finding by the jury that said agent was in line of duty is conclusive upon us. [Ledbetter v. St. Louis Southwestern Ry. Co., 293 S. W. 791.]

In Whiteaker v. Railroad, 252 Mo. 438, LAMM, C. J., at l. c. 457-8 says:

"It would be mere ostentatious display of industry and learning to analyze the fourscore cases appellants cite to sustain their contention that the corporate defendant is not liable on the facts of this record, nor the twoscore that respondent cites to sustain his contention contra. This is so because, at bottom, the doctrine of all well-reasoned cases is that, under the maxim *respondeat superior*, the master must answer in certain circumstances for the wrongful act of his servant precisely as the principal must answer for those of his agent. The general rule is that the maxim, *respondeat*, applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts negligently, or willfully and maliciously, or even contrary to his orders or criminally, in some instances. That general rule is hornbook doctrine and beyond dispute."

As we deem the above to be "hornbook doctrine and beyond dispute," we refrain from discussion of many cases cited.

In our conclusion reached above, we have refrained from attaching any liability on the defendants herein, by reason of any act or word of the wife and stepdaughter of defendant Reilly. Further, the actions of the police, other than incident to the acts of defendants, are not considered as basis for liability on defendants.

The question of punitive damages for the acts of an agent is one wherein the rule is different in different states. In Missouri, liability of master, in case of a wrongful act of an employee in the course of or in connection with his employment, places liability upon the master irrespective of express authorization or ratification. [Haehl v. The Wabash Ry. Co., 119 Mo. 325.]

Under the rule in Missouri, the master is liable for punitive damages for such wrongful acts of the servant as justify such damages. [Randol v. Kline's Inc., 49 S. W. (2d) 112.]

The defendants present that the trial court should have submitted separate forms of verdict permitting finding against one defendant and for the other. The liability of the defendant company rests entirely upon the wrongful acts of the agent, if so, no liability is attempted herein to be placed upon the defendant company, by reason

of any express authorization or subsequent ratification. The liability is predicated alone upon the alleged wrongful acts of the agent Reilly and the instruction in plaintiff's behalf so limits the issue. We therefore conclude there was no error in the court's failure to submit the different forms of verdict.

As to the question of the verdict being excessive, we are constrained to say, especially as to the amount awarded for punitive damages, that there is much in the evidence that tends to the mitigation of damages. However, confronted as we are by a verdict of a jury that has found, as a matter of fact, that an innocent man was wrongfully accused and arrested and wrongfully incarcerated with other accused and subjected to indignities portrayed in the evidence, we conclude that it is not within our province to overthrow the judgment of the jury or declare as error the action of the trial court in refusing a new trial.

The trial in this case is shown to have been conducted with decorum. From our examination of the record, we find no reversible error. The judgment is therefore affirmed. All concur.