## ALICE TIEDE, Appellant, v. O. C. FUHR et al.

### Division One, April 1, 1915.

1. **DEPOSITIONS: Attachment of Witness.** Whatever power a justice of the peace possesses to command by subpoena and compel by attachment the attendance of witnesses before him at the taking of depositions, is statutory.

2. ————: ————: **Notice.** In the absence of waiver and agreement of the parties, the statutory notice to take a deposition is an essential prerequisite to the vesting in the justice of the peace of authority to take the deposition at all, and without such notice he has no power to subponea and attach witnesses whose depositions are desired.

3. ————: ————: ————: **Service: For Past Date.** The service of a copy of a notice to take a deposition on a date that is past, is void and no notice at all, although the original upon which the officer who serves the copy makes his return calls for a future date. The return of the constable is at most but prima-facie, and the rule applicable to a sheriff's return upon summons cannot be invoked.

4. **FALSE IMPRISONMENT: Attachment of Witness: Liability of Private Persons: Mistake in Notice: Punitive Damages.** It is the general rule that it is incumbent upon private persons (such as a party to a suit and his attorney), voluntarily causing the enforcement of a writ of attachment for a witness, to find a record that will support the process; and where they induce the issuance and service of such writ, an action for false imprisonment will lie if the writ is issued without jurisdiction—if, for instance, they induce the justice to issue and the constable to serve a writ of attachment for a witness who has not been served with notice to appear at the taking of the deposition. As to such private persons and a right of action against them it

matters not that the copy of the notice served upon the witness, by unintentional mistake of the justice, called for attendance upon a past date, though a belief by them that due notice had been given is of much importance on the question of punitive damages.

5. ———: ———: Attorney: Good Faith.  Trespass lies against an attorney for a party to a pending suit, who sues out void process whereby another is unlawfully imprisoned.  Nor is bad faith an essential element of false imprisonment.  Good faith will not relieve an attorney from liability for procuring the issuance and service of process from an inferior tribunal absolutely without jurisdiction.  [Questioning soundness of apparently contrary announcement in Fellows v. Goodman, 49 Mo. 62, and distinguishing between good faith and malicious prosecution.]

6. ———: ———: Elements: How Shown.  To sustain an action for false imprisonment, it is necessary to prove the imprisonment, the arrest, the "constraint of liberty," as well as its falsity; but this may be shown to have been effected by words alone, or by acts alone, or by both.  Submission to arrest in order to avoid a demonstration which apparently can only be avoided by submission, is sufficient.

7. ———: ———: ———: Mitigation.  Courteous treatment by the officer making the arrest cannot defeat an action for false imprisonment against a private person who induced the justice to issue and the constable to serve the writ of attachment, nor can the fact that the witness and her attorney knew the notice to attend the taking of the deposition contained a mistake which made it void and did not at an opportune time reveal that fact to the defendant's attorney, though such facts ought to reduce the recoverable damages.

8. ———: Against Attorney's Client.  The evidence in this case supports the inference that the client of the attorney who induced the justice to issue and the constable to serve a writ of attachment for a witness who had not been subpoenaed, knew and approved of his attorney's acts, and therefore he is also liable to the witness in an action for false imprisonment.

9. MALICIOUS PROSECUTION: No Abuse of Process.  Where the evidence reveals no abuse of process, but merely a detention without authority or process, or upon void process, an action for malicious prosecution cannot be sustained.  In malicious prosecution some sort of "prosecution" must appear, which necessarily implies the employment of legal process possessing at least a measure of regularity.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

*Oscar B. Elam* for appellant.

(1) False imprisonment is a mixed question or law and fact. Whether there has, in fact, been an imprisonment is a question of fact for the jury to determine. 5 Ency. of Ev., p. 733. (2) In order to establish the offense of false imprisonment it is only necessary on behalf of the plaintiff to show the imprisonment. 5 Ency. of Ev., p. 733. And however honestly the mistake has been made in causing the arrest to be made, the procurer thereof is nevertheless liable. Bishop on Non-Contract Law, sec. 213. (3) The law presumes every imprisonment unlawful. Floyd v. State, 12 Ark. 43, 54 Am. Dec. 250; Mitchell v. State, 12 Ark. 50, 54 Am. Dec. 253; People v. McGrew, 77 Cal. 570; Kirbie v. State, 5 Tex. App. 60. (4) The burden of proving the imprisonment lawful is upon him who asserts the imprisonment to be lawful. 5 Ency. of Ev., p. 734. (5) Malice is not a constituent element of the wrong of false imprisonment. Bishop on Non-Contract Law, sec. 212; Boeger v. Langenberg, 9 Mo. 396; 5 Ency. of Ev., p. 733. (6) Want of probable cause is not a constituent element of the wrong of false imprisonment in making a prima-facie case. 5 Ency. of Ev., p. 733; Boeger v. Langenberg, 97 Mo. 396. (7) False imprisonment is any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere, in a place stationary or moving, under claim of authority or not, by bolts and bars, by threats overpowering the will, or by any other means. Bishop on Non-Contract Law, sec. 206; Boeger v. Langenberg, 97 Mo. 396; Wehmyer v. Mulvihill, 150 Mo. App. 205. (8) Wrongful arrest is the most familiar illustration.

Tiede v. Fuhr.

If an officer or private person, assuming to act by command or permission of the law, detains one without its authorization in fact, whether believing himself to have the authority or not, he must answer to the arrested person for a false imprisonment. Bishop on Non-Contract Law, sec. 209. (9) One who procured the arrest, whether present or absent when it was made, is in like manner answerable. Bishop on Non-Contract Law, sec. 209. (10) In this country courts of law have no inherent power to direct the taking of depositions, their sole authority in that respect being conferred by constitutional provisions or statutes. 6 Ency. Pl. & Pr., p. 478; In re Nitsche, 14 Mo. App. 213. (11) The notice served upon plaintiff March 31, 1910, that depositions on part of defendant would be taken in the case March 4, 1910, was no notice at all. Range Co. v. Jeffers, 79 Mo. App. 178; In re Nitsche, 14 Mo. App. 213. (12) The service of notice of the time and place of taking the depositions is a condition precedent to the exercise of the right to take the depositions. R. S. 1909, sec. 6392. (13) All plaintiff was required to do to make her case on her count for malicious prosecution was to show that she was prosecuted by the defendants; that the prosecution terminated in her favor, and that it was malicious and without probable cause. Eckerle v. Higgins, 159 Mo. App. 183.

*G. A. Watson, J. J. Gideon* and *W. P. Sullivan* for respondents.

(1) The facts on which the action of the justice of the peace was based were all before him, files of his court, and neither the respondent Fuhr nor his attorney is answerable for his act. Warren v. Flood, 72 Mo. App. 205; Clark v. Thompson, 160 Mo. 461; Brucker v. Frederick, 109 Mo. App. 614; St. Louis v. Karr, 85 Mo. App. 615. (2) To sustain an action for malicious prosecution, malice and want of probable cause

264Mo40

must co-exist. Pinson v. Campbell, 124 Mo. App. 260; Stubbs v. Mulholland, 168 Mo. 47. (3) To sustain an action for false arrest, bad faith must be shown. Daugherty v. Snyder, 97 Mo. App. 495; Fellows v. Goodman, 49 Mo. 62; Roth v. Shupp, 94 Md. 55. (4) An action for false imprisonment may not be maintained for an arrest which is lawful, no matter at whose instigation or from what motive the arrest was made. Bierworth v. Pieronnet, 65 Mo. App. 431; Weymeyer v. Mulvihill, 150 Mo. App. 197; Merchant v. Bothwell, 60 Mo. App. 341; Finley v. Refrigerator Co., 99 Mo. 559. (5) The attachment of Alice Tiede was lawful. R. S. 1909, sec. 6404. (6) She could not be the judge as to her duty to obey the subpoena. Shull v. Boyd, 251 Mo. 475.

BLAIR, J.—Plaintiff appeals from an order overruling her motion to set aside a nonsuit taken when the trial court sustained a demurrer to the evidence. The petition is in two counts, one for false imprisonment and one for malicious prosecution. Each count prays $20,000 as damages.

Plaintiff and defendant Fuhr are sister and brother, and in 1910 were involved in litigation in which defendant Sullivan was acting as Fuhr's counsel and appellant's present counsel represented her.

On March 31, 1910, depositions for plaintiff were being taken before H. A. Garbee, at Billings, in a case then pending in Christian county, instituted by Alice Tiede, the present appellant, against O. C. Fuhr, one of these respondents. On that date opposing counsel signed an agreement purporting to postpone the taking of such depositions until April 4, 1910. On the day the agreement was signed defendant, by his attorney, undertook to give notice to Alice Tiede for the taking of depositions on behalf of defendant in the same case and upon April 4, 1910, but before a different magistrate, E. F. Howcroft, and at an office in Bill-

ings different from that named in the agreement mentioned. The original notice which the constable returned to the justice named April 4, 1910, as the date for taking depositions for the defendant, but the copy of the notice actually delivered to Alice Tiede notified her that the depositions would be taken March 4, 1910. A subpoena to appear before Howcroft on April 4, 1910, was served upon Alice Tiede at the time the supposed copy of the notice was delivered to her. Soon thereafter she noted that the notice was for a day past. It appears that only Mrs. Tiede, her husband and her attorney knew of the error in the notice until she appeared before Howcroft in obedience to an attachment issued by him.

There is evidence that on April 4th counsel for Alice Tiede refused to agree to a division of the day for the taking of depositions before Garbee in her behalf as plaintiff and before Howcroft in behalf of defendant Fuhr, as suggested by defendant's then counsel and present codefendant Sullivan; that defendant's counsel then left the scene, and the taking, in behalf of plaintiff, of defendant Fuhr's deposition was resumed before Garbee; in a short time Fuhr, then on the witness stand undergoing examination by plaintiff's counsel, asked Justice Garbee to excuse him in order that he might consult his attorney, his present codefendant. Fuhr was absent fifteen or twenty minutes and then returned, and there is evidence he was heard to say to his wife: "She will have something else to think about now." This was a short time before the justice's attachment was served. One witness testified that just after the constable who served the attachment left with Alice Tiede in his custody, Fuhr, who was present when the arrest was made, "smiled and said that the fun had all been on one side, but it would be on the other side now." There was some testimony also that earlier in the day defendant Fuhr had attempted to procure the services of a stenogra-

pher to take the depositions before Howcroft, and on being told that the person applied to was engaged with the depositions before Garbee and could not appear before Howcroft at the same time, Fuhr said that "in that case Mr. Sullivan would have to make other arrangements."

The evidence tends to show that Justice Howcroft issued an attachment for Alice Tiede at defendant Sullivan's request and delivered it to the constable in his presence. In fact, the constable testified that "they" (Howcroft and Sullivan) delivered it to him. The constable proceeded to the hotel where Justice Garbee was sitting, and where defendant Fuhr was, and took Mrs. Tiede in custody and accompanied her to Howcroft's office. She was almost immediately discharged by the justice.

I. Whatever power a justice of the peace, taking depositions, possesses to command by sobpoena and compel by attachment the attendance of witnesses, is statutory. [Secs. 6404, 6367, R. S. 1909.]

**Deposition.**

In the absence of waiver and agreement of the parties, the statutory notice to take depositions (Secs. 6392, 6393, R. S. 1909) is an essential prerequisite to the vesting in the justice of authority to take depositions at all. In such case in the absence of authority to take depositions there can be no power to subpoena and attach witnesses whose depositions are desired.

In this case there was no service of notice to take depositions upon April 4, 1910. The copy delivered was for a day that was past and the service was void. The effect of the return of the constable was at most but prima-facie (Bowyer v. Knapp, 15 W. Va. 277) and the rule (Smoot v. Judd, 184 Mo. 508) applicable to sheriffs' returns upon summons cannot be invoked. Assuming that such return is sufficient to protect the

justice himself, in that his erroneous decision that he had jurisdiction of the person fell **False Imprisonment.** within the maxim that ignorance of fact excuses, yet defendants in this case are not within the protective scope of that maxim. They occupy a position somewhat different from that of the justice. It is the general rule that it is incumbent upon private persons, voluntarily causing the enforcement of a writ, to find a record that will support the process (Deyo v. Van Valkenburgh, 5 Hill, 1. c. 244) and in case such persons induce the issuance and service of such writ, false imprisonment will lie in case the writ is issued without jurisdiction.

In this case, the issuance of the attachment was requested by defendant Sullivan, and there is evidence it was delivered to the constable in his presence. Whatever protection, if any, the fact that the failure to give notice was due to an unintentional mistake might afford the justice, it is not a complete answer to this action, since, as stated, a private person voluntarily interferes at his peril; besides, the error was one committed by one of these defendants and he was attorney for the other and acting in his behalf. That defendants' belief that due notice had been given is of much importance upon the question of punitive damages is undeniable, but it does not bar plaintiff's right of action.

Substantial "evidence tending to show that the plaintiff was restrained of his liberty at defendant's instance, by reason of process which the magistrate had no authority to issue in the premises, is sufficient to sustain a count for false imprisonment. Neither malice nor want of probable cause need to be proved to support such an action." [Boeger v. Langenberg, 97 Mo. 1. c. 396; Wehmeyer v. Mulvihill, 150 Mo. App. 1. c. 205.]

II. One of the defendants was an attorney for the other. At common law trespass lies against an attorney who sues out void process whereby another is unlawfully imprisoned. [Barker v. Braham, 2 W. Bl. l. c. 869; Revill v. Pettit, 60 Ky. l. c. 320; Day v. Bach, 87 N. Y. l. c. 61.] "It cannot be disputed but that an attorney who causes void . . . process to be issued in an action, which occasions loss or injury to a party against whom it is enforced, is liable for the damages occasioned." [Fischer v. Langbein, 103 N. Y. l. c. 89; Ward v. Cozzens, 3 Mich. l. c. 259; Williams v. Inman, 1 Ga. App. l. c. 324.]

*Attachment of Witness: Liability of Attorney.*

Respondents suggest that the rule in Missouri is that an attorney acting in good faith is not liable in any case for false imprisonment, and cite authorities.

Dougherty v. Snyder, 97 Mo. App. 495, was an action for false imprisonment. The evidence showed plaintiff was taken in custody in a proceeding in which the probate court had jurisdiction of the subject-matter and acquired jurisdiction of the person in lawful manner. The court pointed out that malicious prosecution would lie in such a case if the proceeding had been prosecuted with malice and without probable cause, but that false imprisonment was not the remedy in a case in which the proceedings were regular, whatever motive actuated the person who initiated them. In that case some doubt was cast upon the rule by a reference to the case of Fellows v. Goodman, 49 Mo. 62. In that case this court held that though the process regularly issued from a court, with full jurisdiction, yet the proceedings were patently a *sham* and false imprisonment would, on that account, lie. That case is anomalous. Any legal proceeding instituted from malice and without probable cause is a sham in the true sense. It is because it is in such sense a sham that an action for malicious prosecution lies. That extreme malice and absolute want of any sort of cause

appear is no reason for holding that false imprisonment lies for abuse of process regularly issued and served, nor that bad faith either transforms regular process into void process or converts malicious prosecution into false imprisonment. It merely aggravates the damages for the malicious prosecution. The case of Fellows v. Goodman, in so far as it departs from this view, is unsound in principle and is overruled. Bad faith is not an essential element of false imprisonment. [Boeger v. Langenberg, 97 Mo. 1. c. 396.]

Roth v. Shupp, 94 Md. 55, was an action for false imprisonment brought against the party who had instituted certain proceedings, her attorney and the justice who committed plaintiff in default of payment of a fine assessed.

The case shows the justice had jurisdiction and the court held that a showing he acted erroneously would not sustain the action. The case, apparently, had been tried on principles applicable to actions for malicious prosecution. Judgment was for defendants and was affirmed. In its discussion the court was drawn into a consideration of principles applicable to actions for malicious prosecution and its conclusions are based upon citations of decisions in such actions, e. g., Peck v. Chouteau, 91 Mo. 1. c. 151; Burnap v. Marsh, 13 Ill. 535. What is said relative to the good faith of the justice and the attorney is not, when properly understood, to be taken as an announcement that good faith will relieve an attorney of liability for procuring the issuance and service of process from an inferior tribunal absolutely without jurisdiction.

The effect of that decision is that the judgment below in that case was right, considering the action either as one for false imprisonment or for malicious prosecution.

III. It is necessary to prove the imprisonment, the arrest, the "constraint of liberty," as well as its

**False Imprisonment: Elements.** falsity; but this may be shown to have been effected by words alone, or by acts alone, or both. Submission to a demonstration which apparently can be avoided only by submission, is sufficient. [Ahern v. Collins, 39 Mo. l. c. 151; Dunlevy v. Wolferman, 106 Mo. App. l. c. 51.]

There is evidence the constable arrested plaintiff and took her in custody and conveyed her to Howcroft's office. The distance was not great, it is true, and the time was not long and the constable's treatment of plaintiff was not only not harsh but, on the contrary, he was courteous, even deferential. Yet these things, when the illegal restraint is shown, do not defeat the right of action, however much they ought to reduce the recoverable damages.

The same thing is true of the action of plaintiff and her counsel during the time defendant Sullivan was endeavoring to secure an agreement as to a division of the day (April 4) between the two sets of depositions. It is true both plaintiff and her counsel knew of the mistake in the date in the copy of the notice served, and that neither of them, during the controversy over dividing the time, mentioned that mistake, though counsel, at least, must have known Mr. Sullivan was relying upon that notice as the basis of his right to take depositions that day at all. However reprehensible this conduct be thought, yet the fact remains that there was no notice and, therefore, no authority in Howcroft to take depositions at all and, consequently, no authority to attach a witness for disobeying a subpoena.

IV. It is urged that "a witness legally subpoenaed cannot be permitted to determine for herself whether the process of the court should **Legal Subpoena.** be obeyed," and Shull v. Boyd, 251 Mo. l. c. 475, is cited. The facts of this case show no issuance of any "process of the court" and show that the

witness was not legally subpoenaed. The justice having no jurisdiction could not issue valid process.

V.  It is contended there is no evidence to connect defendant Fuhr with the proceedings in a way to render him liable.  There is substantial evidence from which a jury might find Fuhr knew depositions at Howcroft's office were to be taken in his

Parties to False behalf; that his attorney was in charge
Imprisonment. of that matter; and, we think, that Fuhr knew in advance that his attorney intended to procure the issuance of the attachment for Alice Tiede.  His movements and conversation would justify a jury in drawing these inferences and in concluding that when the constable appeared and, in Fuhr's presence, attached Alice Tiede, Fuhr knew what was being done and that what he said about "the fun" going to "be on the other side now" had reference to the attachment and disclosed his knowledge and approval of that proceeding.  [Cooper v. Johnson, 81 Mo. 483; Newell on Malicious Prosecution, p. 212, sec. 97.]

On the whole record the case should have gone to the jury against both defendants on the count for false imprisonment.

VI.  The count for malicious prosecution is not sustained by the evidence offered since no abuse of process appears but merely a detention without authority or process or "upon void

Malicious Prosecution. process," which is no process at all.  In malicious prosecutions not only defendant's malice and want of probable cause must appear, but it must be shown that there was a "prosecution" which necessarily implies the employment of legal process possessing at least a measure of regularity.  [McCaskey v. Garrett, 91 Mo. App. l. c. 359; Boeger v. Langenberg, 97 Mo. l. c. 395, 396; Finley v. Refrigerator Co., 99 Mo. l. c. 562, 563.]

So far as concerns the count for malicious prosecution the trial court's ruling was right. On the count for false imprisonment the ruling was wrong.

The judgment is reversed and the cause remanded to be proceeded with not out of conformity with this opinion.

*Graves, P. J.,* concurs; *Woodson, J.,* concurs except as to what is said concerning the case of Shull v. Boyd, 251 Mo. 475; *Bond, J.,* dissents as to what is said concerning Fellows v. Goodman, 49 Mo. 62, and concurs in result only.