GLADYS TITUS, RESPONDENT, v. MONTGOMERY WARD & COMPANY, A CORPORATION, APPELLANT.—123 S. W. (2d) 574.

In the Springfield Court of Appeals.   December 5, 1938.

Rehearing Denied January 4, 1939.

*Paul E. Bradley, Charles M. Grayston* and *Robert L. Wright* for appellant.

*Vern E. Thompson, Loyd E. Roberts* and *Russell Mallett* for respondent.

FULBRIGHT, J.—This is an action to recover damages in the sum of $3000 for an alleged false arrest and imprisonment. Trial was had by a jury in the Circuit Court of Jasper County resulting in a verdict and judgment for plaintiff in the sum of $300. Motion for new trial was overruled and defendant appealed.

The petition is in conventional form and alleges that Irene Hoffman was a duly appointed and authorized servant of the defendant, Montgomery Ward & Company, a corporation; that plaintiff, in company with three relatives, went to defendant's store December 23, 1933; and that in leaving while plaintiff was upon the sidewalk adjoining and near the store the defendant, by and through its servant and agent, Irene Hoffman, while acting within the scope of employment, without a warrant, process, or authority of law, arrested and restrained plaintiff of her liberty. Plaintiff prayed for $3000 actual damages. No punitive damages were asked.

Defendant's answer admitted its corporate existence and authority to do business in Missouri, and that it is engaged in conducting a store in Joplin, but denied each and every other allegation in plaintiff's petition. As an affirmative defense defendant pleaded, in part, as follows: ''That at the time of the occasion in front of said store

the said sales clerk was engaged in the investigation of circumstances such as caused her to believe and that she did believe that a dress had been unlawfully removed by plaintiff or her companions and that she was engaged in the protection of defendant's interests and property and acting in good faith in so doing and that she had probable cause to believe and did believe that property of the defendant had been taken without right." To this answer plaintiff's reply was in the nature of a general and specific denial.

Plaintiff testified that on December 23, 1933, she, Florinda Gust, Gladys Hurst, Daisy Hurst, and Gladys' little boy went to Montgomery Ward's store to look for a coat for plaintiff's mother; that they looked through the coats, and not seeing one they liked, started out; that when they first looked at coats no clerk was present, but one came later, asked if she might wait on them, and was told that the coats were not suitable; that Gladys Hurst walked over to the coats, Daisy stopped by the door to look at a coat on a model there, and Florinda Gust stood at the door and never did enter; that in leaving, at the top of the stairway they stopped to observe a display of a mechanical toy for a minute or two, but did not go by the furniture department, and were not whispering among themselves. Plaintiff further testified that she and her companions left by the door through which they entered, plaintiff in front of the party, carrying a coat in a large sealed box which she had purchased elsewhere, and was almost to the curb watching the traffic light and waiting for the others, thinking they were near at hand, "but the first thing I knew Irene Hoffman grabbed ahold of me and said, 'Wait a minute, hold on, don't move or I will call an officer and put you in jail.' I just stood there, didn't know what else to do. She went through my coat, clear into the back of it, both sides, and tore the whole end out of the box, didn't tear it open, pulled the coat about half way out and was hollering all the time, 'Stand still, or I will call an officer and put you in jail.' She said 'Don't move' and I stood still. I was afraid. She didn't say what she was searching me for. I said, 'What does this mean?' She kept saying, 'Stand still, or I will call an officer.' Called us shoplifters. I didn't know she had searched the others. She said you couldn't steal anything off of her floor and get away with it, and she went through my box and my clothes and started to run back in the store." This testimony was corroborated in essential parts by the testimony of Florinda Gust and Daisy Hurst.

On behalf of defendant, the evidence showed that plaintiff and her companions walked around the dress racks that Mrs. Hoffman had recently checked; that Mrs. Hoffman had removed all empty hangers and pinned back the dresses; that when the ladies came into the department Mrs. Hoffman was on the opposite side of the room and in about a minute she went over to wait on them; that as she walked around one of the dress racks which she had recently

checked she saw an empty hanger still swinging; that she took the hanger down knowing that the dress had been removed, and handed it to Mrs. Van Hoorebeck who was in the department at the time; that when she took the hanger down two of the ladies acted very excited and nervous and one's face got red; that when the women went out two of them acted especially nervous, "just sort of ambled out of the department;" that the largest lady lagged back behind the others looking at some living room furniture; that she stooped over as if she was examining the tapestry or material of the chair and davenport; that the next to the largest lady acted suspiciously holding her coat tight, and this left the impression on the clerk that the dress was under her coat; that all the ladies met at the toy department, then went on down stairs, the clerk following; that at the front of the store they stopped, held a whispered conversation, then went on out; that Mrs. Hoffman said, "Just a minute," and looked inside the coat of one of the ladies, but did not go through her parcels; that she glanced in the other two ladies' coats, but did not touch them or go through their packages; that when she got to the lady on the curb she asked permission to examine the contents of the box, which was given; that the lady opened the box herself and that the clerk did not touch her at all; and that she went immediately to the furniture department where the lady had stood and there found the dress kicked back under the davenport. Mrs. Hoffman testified: "When I was out on the street the full conversation that was had between me and these ladies was: I said, 'Just a minute' to the first lady as I looked in her coat and I might have said 'Wait' to the one that had gone the farthest out and then I asked her if I might see in her box and she said 'certainly.' That is all that was said. I wasn't out there over a minute."

The defendant charges that the court erred in refusing to give instructions E and H. Instruction E is as follows:

"The court instructs the jury that if you find and believe from the evidence that a dress was missing from one of the racks in the fashion department and that at said time the plaintiff and her companions were in said department looking at merchandise on display and that the said dress was missing from said rack under such circumstances as to induce in the mind of the said Irene Hoffman an honest belief, and she did believe, that the plaintiff or one of her companions had stolen said dress, then you are instructed that said Irene Hoffman had the right to detain plaintiff and her companions for a reasonable time to investigate the disappearance of said dress and even though you may find that Mrs. Hoffman forcibly restrained plaintiff, yet if you find plaintiff was not restrained for an unreasonable length of time, then your verdict must be for the defendant."

This instruction is based upon defendant's contention that if Irene Hoffman had cause to believe and did believe that plaintiff or

one of her companions had stolen property belonging to the defendant, she had a right to arrest and restrain plaintiff for a reasonable length of time for the purpose of making an investigation. Defendant therefore proceeds upon the theory that probable cause is a defense to false arrest and imprisonment. In support thereof numerous cases from foreign jurisdictions are cited, and one, Collyer v. S. H. Kress Co., 54 Pac. (2d) 20, a decision of the Supreme Court of California, strongly supports defendant's theory. This opinion may declare the law in that State, but it is in direct conflict with the rule adopted and uniformly followed by the courts of Missouri. Our courts have held that probable cause has no place in a plaintiff's suit for false arrest if compensatory damages only are asked. [Greaves v. Kansas City Junior Orpheum Co., 80 S. W. (2d) 228; Thompson v. Bucholz, 81 S. W. 490; Ahern v. Collins, 39 Mo. 91.] However, probable cause may be shown in mitigation of damages, especially if exemplary or punitive damages are involved. [Rice v. Gray, 34 S. W. (2d) 567; Oliver v. Kessler, 95 S. W. (2d) 1226.] We have carefully examined the case of Fenn v. Kroger Grovery & Baking Company, 209 S. W. 885, cited in the case of Collyer v. S. H. Kress Co., *supra,* and find nothing therein which we think supports defendant's contention. In the concluding paragraph, the only part of the opinion dealing with false arrest, the court said:

"A case was not made out for false arrest. The plaintiff said she was intercepted as she started to leave the store; that Mr. Krause stood where she could not pass him in going out. She does not say that he made any attempt to intercept her. She says he escorted her back to the desk, that he asked her to let him see the change, and then she added, 'When he said that I walked up to the counter; he was alongside of me.' She does not say that she went unwillingly. On the contrary, it appears that she had been charged with going away without paying for the goods, and she was as ready to explain the difficulty as the employees of the store were to have her explanation. Evidence is wholly lacking to show that she was detained by force or threats. It was probably a disagreeable experience, a humiliating one to her, but she came out victorious and was allowed to go when she desired with the assurance of Mr. Krause that it was all right. The demurrer to the evidence on both counts was properly sustained."

As we view this ruling, the only question passed upon was the sufficiency of the evidence. Other Missouri cases cited by defendant do not seem to be in point.

In the case of Pandjiris v. Hartman, 196 Mo. 539, 94 S. W. 270, the court said:

"It is the right and privilege of any citizen knowing that one has committed or is in the act of committing a crime to arrest the offender or cause him to be arrested without waiting for a warrant,

but in doing so the unofficial citizen takes this risk, to-wit, if it should turn out that the man whom he has arrested was not guilty of the crime, the citizen causing the arrest is liable in a civil action for whatever damages the arrested man sustained in consequence of his arrest and imprisonment. In such case it is no answer to the plaintiff's demand for damages for the defendant to say I had reasonable cause to believe the plaintiff was guilty; I acted without malice, I took the advice of counsel learned in the law. The only plea of justification or excuse is that plaintiff was guilty of the crime for which he was arrested.''

Mrs. Hoffman's action cannot be justified or excused on the ground that she honestly believed that plaintiff or one of her companions had stolen the dress. Her belief was unfounded. The dress was afterwards found upstairs in defendant's store. Since she acted indiscretely, or with bad judgment, or through mistake, and arrested, restrained and searched a person not guilty, her employer is responsible. Honesty of purpose and intention will not excuse the trespass, and the restraint, however short, was unwarranted. [Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68; Knowles v. Bullene, 71 Mo. App. 341; Hurst v. Montgomery Ward & Co., 107 S. W. (2d) 183.] It is our conclusion that instruction E was properly refused.

Instruction H reads as follows:

''The court instructs the jury that unless you find and believe from the evidence that Irene Hoffman forcibly restrained plaintiff against her will and under such circumstances as to lead a reasonable prudent person in the same situation to believe that she could not escape if she wished, then your verdict must be for the defendant.''

If the conduct of Irene Hoffman toward plaintiff was such as to give her reasonable cause to believe, and she did believe, that Irene Hoffman intended to control her actions, and, if necessary, use force for that purpose, and thereby restrain plaintiff from acting upon her own volition, such conduct on the part of Irene Hoffman constituted an arrest and imprisonment, if by reason thereof plaintiff unwillingly submitted to her control, and this is true although plaintiff made no active resistance. [Furlong v. German-American Press Ass'n, 189 S. W. 385; Humphreys v. St. Louis-San Francisco Ry. Co., 286 S. W. 738; Hurst v. Montgomery Ward & Co., supra; Daniel v. Phillips Petroleum Co., 73 S. W. (2d) 355.]

This conclusion is supported by the case of Dunlevy v. Wolferman, 106 Mo. App. 46, 79 S. W. 1165, in which the court said:

''And so it is said that: 'An actual manual arrest is not necessary to constitute false imprisonment. A demonstration looking to arrest, which to all appearances can only be avoided by submission, operates as effectually if submitted to, as if the arrest had been forcibly accomplished without such submission. [Brushaber v. Stig-

enann, 22 Mich. 266.] To tell one on a ferry that he shall not leave it until a certain demand is paid, is an imprisonment if one submits through fear though the person is not touched and no actual violence offered.' [Cooley on Torts, 170.] 'One is not obliged to incur the risk of personal violence and insult by resisting until actual violence be used. There need be no formal declaration of arrest.' [Pike v. Hanson, 9 New Hamp. 491.] 'False imprisonment may be committed by words alone, or by acts alone or by both, and by merely operating the will of the individual. It is not necessary that the individual be confined within a prison or assaulted or even touched.' [Comer v. Knowles, 17 Kans. 436; and Doyle v. Royle, 19 Kans. 168.]''

In the case of Burton v. Drennan, 58 S. W. (2d) 740, the court said: "False imprisonment is defined in 11 R. C. L., p. 791, Sec. 2, as 'the direct restraint by one person of the physical liberty of another without adequate legal justification.' [See, also Hansel v. Bieber, 271 Mo. 326, 335, 197 S. W. 68.] The essence of the tort consists in depriving the plaintiff of his liberty without legal justification. [McCaskey v. Garrett, 91 Mo. App. 354, 359.]''

The case of Griffin v. Clark, 42 Pac. (2d) 297, quotes with approval from Sec. 35, Vol. 1, Restatement of the Law of Torts, as follows:

"So too, even though there may be a perfectly safe avenue of escape, the other is not required to take it if the circumstances are such as to make it offensive to a reasonable sense of decency or personal dignity."

The question is not whether Irene Hoffman *forcibly* restrained plaintiff against her will and under such circumstances as to lead a reasonably prudent person in the same situation to believe that she could not escape if she wished, as plaintiff's arrest could be effectuated without force, and she was not required to attempt an escape if she had reasonable cause to believe that in so doing she would run the risk of personal violence or insult. The question is whether the conduct of Irene Hoffman was such as to give plaintiff reasonable cause to believe that she intended to control plaintiff's actions and, if necessary, to use physical force or violence for that purpose. As to whether plaintiff had reasonable cause to so believe was a question for the jury and was fairly submitted in other instructions given by the court. Instruction H was properly rejected.

Finding no reversible error, the judgment of the trial court is affiffirmed. *Allen, P. J.,* and *Smith, J.,* concur.