FLORINDA GUST, RESPONDENT, v. MONTGOMERY WARD & COMPANY, A CORPORATION, APPELLANT.—136 S. W. (2d) 94.

Springfield Court of Appeals.   December 26, 1939.

Rehearing Denied February 9, 1940.

612

*Paul E. Bradley, Chas. M. Grayston, George W. Wise* and *L. E. Oliphant* for appellant.

*Vern. E. Thompson, Lloyd E. Roberts, Thompson & Roberts* and *Russell Mallett* for respondent.

FULBRIGHT, J.—This is an action to recover damages in the amount of Three Thousand Dollars ($3,000) for an alleged false arrest and imprisonment, occurring on the 23rd day of December, 1933, in the alcove or doorway of defendant's store in Joplin. Trial was had by jury, verdict and judgment for plaintiff in the sum of Twenty-Five Hundred Dollars ($2500), motion for new trial overruled, and defendant appeals to this court.

The petition alleges that the defendant, Montgomery Ward & Co., conducted a retail merchandise store at the northwest corner of Fifth and Joplin Streets, in Joplin, and that Irene Hoffman was the servant and agent of the defendant; that on or about the 23rd day of December, 1933, the plaintiff, in company with three relatives, entered defendant's store located in Joplin and left said store without purchasing anything therein; that after the plaintiff and her companions had left the store and were on the sidewalk adjoining the store, the defendant, through its servant and agent, Irene Hoffman, without any warrant, process or authority of law, did arrest and restrain the plaintiff of her liberty and took hold of plaintiff in a violent and abusive manner, at the same time threatening her that if she did not stand still a policeman would be called and she would be sent to jail; and while using violent and abusive language toward this plaintiff and accusing her of theft and shoplifting, forced the said plaintiff to remain still on the sidewalk in front of said store, under arrest and imprisonment, while

the said Irene Hoffman, acting within the scope of her employment and in furtherance of the business of the defendant, Montgomery Ward & Company, a corporation, did violently search the plaintiff under her coat, in the bosom of her dress and under the arms of her coat, and, failing to find any goods which the said Irene Hoffman claimed had been stolen, plaintiff was thereafter discharged and released.

Plaintiff further states that by said arrest and false imprisonment, plaintiff was caused to suffer great inconvenience, pain and anguish of mind, and was humiliated, embarrassed and disgraced among her friends and acquaintances and the people of Joplin, Missouri, and was injured in her good fame and name to her actual damages in the sum of Three Thousand Dollars ($3,000).

An amended answer of defendant admitted it was a corporation, authorized to do business in the State of Missouri; that it was engaged in conducting a store in Joplin, Jasper County, Missouri, and denied each and every other allegation contained in said petition. The answer further contains a recital of facts, alleging that sales clerk was engaged in the investigation of circumstances such as caused her to believe, and that she did believe that a dress had been unlawfully removed by plaintiff or one of her companions; that she was acting in good faith towards the interest of defendant and that she had probable cause to believe and did believe that property of the defendant had been taken without right.

Plaintiff's reply was in the nature of a general and specific denial of the matters set up in defendant's amended answer.

On December 23, 1933, plaintiff, accompanied by Gladys Titus, sister, and Gladys Hurst and Daisy Hurst, sisters-in-law, and Bobby Hurst, a five-year-old son of Gladys Hurst, went to the store of Montgomery Ward & Company, in Joplin, for the purpose of looking for a coat for plaintiff's mother. They went in the south door, through the store and upstairs to the second floor. After they got to the top of the stairs, or second floor, plaintiff went a little ways back, about halfway back in the room and stood there looking at a little mechanical motorcycle which was on display and her sisters-in-law and sister went back into the coat department, which was at the east end of the store on the south side.

Plaintiff did not watch or pay any attention to her sister and sisters-in-law there in the coat department and didn't go back there. She didn't see anything of the clerk of the defendant company; and no clerk spoke to her while she was up there.

After plaintiff's sister and sisters-in-law had gone to the coat department, they returned to where she was standing, in the toy department; plaintiff was not near any dress or coat racks nor saw any furniture while on the second floor and she didn't see any of her companions around the dress racks. When her companions returned to where

plaintiff was standing, they walked downstairs together, went out the same door they came in, Gladys Titus in the lead, and stopped to look in the window at a radio. All at once a woman rushed out of the store and grabbed Daisy Hurst and said, "Here is these shoplifters," she said, "Somebody stole something off of my floor, and I am going to have it if I have to tear your clothes off;" and she said, "Stand still, or I will call an officer." She grabbed Daisy Hurst's coat and felt under her arms, tore open a package and looked into it, but did not say what she was looking for. She had a brown dress hanging on her arm when she came down there.

Then the clerk turned to plaintiff, who was standing right behind Gladys and grabbed her dress and tore it down the side, and grabbed a sack that plaintiff had some socks in and looked in it and then she felt of a sack that plaintiff had some pictures in and then she kept saying, "Stand still, or I will call an officer—I will put you in jail; somebody stole something off of my floor and I am going to have it if I have to tear the clothes off of you."

She then turned to Gladys Hurst, who was standing by plaintiff, grabbed her and pulled a button off her coat and looked inside. Then turned around to her little boy, "and took hold of his sweater and raised his sweater up to look under it, and she just kept hollering in a loud tone of voice, 'all of you stand still or I will call an officer and put you in jail. You shoplifters don't get anything off of my floor and get away with it.' We stood still when she told us to—we didn't move at all until after she finished. We stood still because we was scared and we didn't know what else to do."

The clerk then went on down the street to where Gladys Titus was standing and grabbed a box out of her hand and tore the end out of it and repeated substantially the same words to her. After she got through searching Gladys Titus and Gladys Titus' box, she turned around and ran back into the store, plaintiff and her companions following. There were lots of people on the street and they also followed. The clerk started up stairs, turned around, came back and went out the back door and they never saw her again.

After Mrs. Hoffman ran out the back door, plaintiff and her companions turned around and went back downstairs and asked a clerk where the manager was and a Mr. Zinn was pointed out to them. He told them he was manager, that Irene Hoffman was the clerk who searched them. Upon being asked if he sent her out, he said, "Well, I did send her out there, but I didn't have any right to."

Plaintiff testified she was scared when Mrs. Hoffman came out on the street and she was surprised—rather astonished.

Defendant's evidence tended to show that plaintiff and her three companions were coming into the coat department just as defendant's clerk had started over toward the dressing room. They walked in the department, around the coats and dresses. In a moment the clerk

came back to where the ladies were around the dress rack. There was no little boy with them. When the clerk came back, she walked around the rack and asked the ladies if she could help them and the first thing she noticed was that one lady had her back to her, jerking her coat around her. There was an empty hanger swinging on the dress rack and the brown dress was gone. The clerk had just hung the dress on the rack a few minutes before. She took the hanger off the rack and held it in her hands a few minutes, and just as she did so and asked the ladies to wait on them, she noticed they acted very much agitated and got red in the face and were very nervous. She had never seen any of the ladies before.

It was the invariable custom of the store never to permit an empty hanger to remain on the dress rack.

When the clerk asked plaintiff and her companions if she could show them anything, one of the ladies said they were looking for coats, and she showed them coats and tried to get the ladies to try them on but they wouldn't. They walked around and just before they went out of the department they got their heads together and two of them whispered. They then went out of the department.

Plaintiff and her companions started down the aisle through the furniture to the toy section and one lady stopped at the overstuffed furniture and bent over this furniture and seemed to be examining the tapestry or covering on it and that was the largest lady, the plaintiff. The other ladies went on down the aisle. Plaintiff stopped there at the furniture just a minute or so, but the clerk did not watch her very closely, she watched the others more closely, as one lady was holding her coat and acting so suspicious; it wasn't plaintiff, it was the next lady in size. They all stopped at the toy section a moment and then went downstairs. The clerk followed them downstairs and noticed that just before they went out the door they gathered together in a group and whispered something, then they went out the door.

Mrs. Hoffman, defendant's clerk, walked up to one lady and said, ''Just a minute, please,'' to the one closest to the door and the one that had acted suspicious and ran her hand under this lady's coat. The clerk didn't do anything else except to look in the other ladies' coats; she didn't touch them. Then she walked to the fourth lady that was standing near the edge of the sidewalk and asked if she might see in her box. This lady said, ''Certainly.'' She opened the end of her box, and the clerk looked in, but did not touch the box or anything that was in it and didn't touch the lady holding it. She did not say anything more to the ladies and couldn't have been out there more than a minute or two; and noticed no one on the street except plaintiff and her companions and Mrs. Van Hoorebeke, when she first went out. She then went back into the store and upstairs to the furniture department, where she found and picked up the dress she had been looking for, at the place where one of the ladies had been standing.

She put the dress across her arm, started downstairs meeting the plaintiff and her companions at the landing. They asked her where the manager was. He was located; she told him the ladies wanted to see him; then she returned to her department.

Defendant's evidence further showed that Mrs. Hoffman, the clerk, didn't have a brown dress on her arm when she went downstairs and out the front door to speak to plaintiff and her companions, but that she did have a brown dress on her arm when she came downstairs the second time.

Seven assignments of error are urged: The first of which is, that the court erred in refusing defendant's instruction in the nature of a demurrer to the evidence, offered at the close of plaintiff's case, and again offered at the close of all the evidence, because the evidence did not sustain the allegations of the petition. In filing its demurrer defendant admitted the truth of plaintiff's evidence and the conclusions a jury might reasonably draw therefrom. Therefore, the trial court, in passing upon such a demurrer, must consider plaintiff's evidence to be true and draw every inference in its favor that the law will warrant. [Hanser v. Beiber, 271 Mo. 326, 197 S. W. 68; Meenach v. Crawford, Mo., *supra*, 187 S. W. 879; Hurst v. Montgomery Ward & Company, 107 S. W. (2d) 183.]

False imprisonment consists of the direct restraint of personal liberty. There need not be actual force; the restraint may be from the fear of force, as well as from force itself. Words alone, are frequently sufficient to being about the actual restraint of liberty. False imprisonment may be committed by words alone, or by acts alone, or by both and by merely operating the will of the individual. There need be no formal declaration of arrest. It is not necessary that the individual be confined within a prison or assaulted or touched. [Hanser v. Beiber, *supra*; Tiede v. Fuhr, 264 Mo. 622, 175 S. W. 910; Burton v. Drennan, 332 Mo. 512, 58 S. W. (2d) 740; Dunlevy v. Wolferman, 106 Mo. App. 46, 79 S. W. 1165; Titus v. Montgomery Ward & Company, 123 S. W. (2d) 574.]

Applying the foregoing rules, well established in our jurisprudence, to the evidence most favorable to plaintiff, and which must be accepted as true, we hold, as we did in a companion case, Hurst v. Montgomery Ward & Co., *supra*, upon substantially the same evidence, that the court did not err in refusing to sustain defendant's demurrer to the testimony.

Appellant insists that the petition alleges forceable restraint only; that is, restraint solely by physical force, and that there is no evidence to support the charge. The pertinent portion of the petition charges that the defendant did, "without any warrant, process or authority of law, arrest and restrain plaintiff of her liberty and took hold of plaintiff in a violent and abusive manner, at the same time threatening her that if she did not stand still a policeman would be called

and she would be sent to jail; and using violent and abusive language and accusing her of theft and shoplifting, forced plaintiff to remain still on the sidewalk in front of the store, under arrest and imprisonment.'' Obviously, appellant's position is wholly without merit. It will be observed, the petition says, defendant ''took hold of plaintiff in a violent and abusive manner, at the same time threatening her that if she did not stand still a policeman would be called and she would be sent to jail.'' This allegation alone, charges the use of physical force, as well as threats and words, sufficient to bring about the actual constraint of liberty. The charge that defendant did arrest and restrain plaintiff of her liberty, followed by the allegation that she took hold of plaintiff in a violent and abusive manner, threatened her that if she did not stand still a policeman would be called and she would be sent to jail and the further allegation that, while using violent and abusive language toward plaintiff and accusing her of theft and shoplifting, forced her to remain still on the sidewalk, in front of said store, under arrest and imprisonment, is sufficiently broad to charge restraint of liberty by means of force, or threats, or both.

Plaintiff testified that a woman rushed out and grabbed Daisy Hurst, one of her companions, and said, ''Here is these shoplifters. Somebody stole something off of my floor and I am going to have it if I have to tear your clothes off . . ,'' and she said, ''stand still or I will call an officer. . . . Then she turned around to me—I was standing right behind Gladys (another companion) and she grabbed my dress here (indicating) and tore it down the side. . . . She kept saying, 'Stand still, or I will call an officer—I will put you in jail; somebody stole something off of my floor, and I am going to have it if I have to tear the clothes off of you.' '' She further testified that she stood still because she was scared. It may be reasonably inferred from this testimony, and the evidence heretofore set out, that the defendant dominated and operated the will of the plaintiff, and that there was such a display of force, that, to her, apparently could be avoided only by submission. We think this testimony, if true, establishes illegal restraint of liberty.

What we have said above disposes of appellant's second and fourth assignments of error, wherein it is urged that the court erred in giving instructions one, two and four for the plaintiff and in refusing defendant's instruction A, C, F, and G. Since we hold that the allegations in the petition are sufficiently broad to charge restraint of liberty by means of force, or threats of force, or both, appellant's criticism that ''These instructions were broad enough to cover imprisonment by threats, as well as force and thus enlarged the issues tendered by the petition,'' is without merit and the trial court did not err in giving said instructions. It necessarily follows that appellant's instructions, which limited the issue to detention by force alone, and

618

limited recovery to detention occasioned solely by physical force, were properly refused.

The third assignment of error is leveled at the following instruction: ''The court instructs the jury that it is the right and privilege of any citizen knowing that one has committed, or is in the act of committing a crime, to arrest the offender or cause him to be arrested without waiting for a warrant, but by so doing, if it developes that the arrested person is not guilty of a crime, then the arrest is unlawful.'' This identical instruction was passed upon in the case of Hurst v. Montgomery Ward & Co., *supra*. We there held that the giving of said instruction did not constitute reversible error. While we may assume the instruction, as written, should not have been given, yet it was in no sense prejudicial to the defendant. On the contrary, it places the defendant in a more favorable light than the law warrants, and it therefore, cannot be heard to complain.

Assignment Number Five charges the court erred in refusing to give defendant's instruction ''J.'' This instruction is as follows: ''The court instructs the jury that in determining whether or not plaintiff was falsely arrested or imprisoned, you will not take into consideration any acts or conduct of Mrs. Hoffman, taking place outside of the store prior to the time Mrs. Hoffman came up to plaintiff and spoke to her.'' In view of the testimony, as heretofore set out, this instruction was properly refused. The record discloses that when Mrs. Hoffman first rushed out the door, she grabbed Daisy Hurst, one of plaintiff's companions, and said, ''Here is these shoplifters . . .''. The only inference that can be drawn by this statement, is that she referred to plaintiff and her companions. It was proper to show what she said and did, as throwing light on her purpose and intent.

Assignment Number Six charges that ''The court erred in refusing instruction 'H' which stated in substance, that unless the jury found that Irene Hoffman forcibly restrained the plaintiff against her will and under such circumstances as to lead a reasonably prudent person, in the same situation, to believe that she could not escape if she wished to, then there was no unlawful imprisonment.'' What we said in the case of Titus v. Montgomery Ward & Company, *supra*, L. C. 578, relative to the trial court's action in refusing a similar instruction, applies with equal force to the one refused in the case at bar. The question to be submitted to the jury was not whether Irene Hoffman forcibly restrained plaintiff against her will and under such circumstances as to lead a *reasonably prudent person* in the same situation to believe that she could not escape if she wished; rather, 'the question to be submitted was whether the conduct of Irene Hoffman was such as to give *Plaintiff* reasonable cause to believe that she intended to control plaintiff's actions, and if necessary, use physical force or violence for that purpose. As stated in the case of Humphreys v. St. Louis S. F.

Ry. Co. (Mo. App.), 286 S. W. 738, if a person "is not actually arrested, as that term is commonly understood, the conduct of the other party toward him must be such as to give him reasonable ground to believe that the other party intends to control his actions, and if necessary, use force for that purpose, and thereby restrain him from acting upon his own volition; and if, by reason thereof, he submits to the control of the other party, then the proof will be sufficient to sustain a charge of false arrest." In other words, when restraint is imposed by means of force, or threats of force, the element of escape or avenue of escape has not application. [Ahern v. Collins, 39 Mo. 145.]

Restraint through force or threats of force embodies peril and the rule that, "if a way of escape is left open which is available without peril of life or limb, it is no imprisonment," has no application where detention is brought about by reason of force or threats of force. The case of Furlong v. German-American Press Association, 189 S. W. 385, upon which appellant bases this theory, is not controlling in the instant case. Yet, we have no criticism of what the court there said in defining false arrest, as applied to the facts in that case. The clear inference to be drawn from the comments made by the court therein, is, that when the restraint complained of is imposed by reason of force or threats of force, the avenue of escape, as therein defined, is closed. The instruction complained of does not correctly state the law applicable to the facts in the instant case and was properly refused.

The final assignment to the effect that the verdict is excessive, commands our serious consideration. The amount of damages is largely a question for the jury and will not be interferred with on appeal unless it appears that the amount allowed is the result of passion and prejudice. But if the amount of the judgment is such, that if allowed to stand injustice will result, it is the duty of the court, if within its power, to so act that such injustice may be prevented. Moreover, when the verdict and judgment is so excessive as to shock a judicial sense of right, it is the duty of the appellate court, in its superintending capacity and control over the trial court, and under its solemn responsibility, to prevent, where it can within proper bounds, the triumph of wrong over right and justice. [Taylor v. Railroad, 185 Mo. 239; Hurst v. Montgomery Ward & Co., *supra*; Keener v. Missouri Pacific Ry. Co., 269 S. W. 635; Sachse v. Highland Dairy Farms Co., 45 S. W. (2d) 934.]

Juries have rendered verdicts in two former cases (Hurst and Titus cases, *supra*) for $1,000 and $300 respectively, companion cases to the one at bar, growing out of the same transaction and based upon substantially the same pleadings and evidence.

Considering these verdicts, and in view of the fact that the record discloses no physical injury to plaintiff; that her detention was for such a brief period of time, and that her reputation appears to have been injured but little, if any, it occurs to us that the judgment is

excessive and a *remittitur* should be required. If plaintiff will, within ten days, enter her *remittitur* in the amount of Twelve Hundred Fifty Dollars ($1250), the judgment will be affirmed; otherwise it will be reversed and the cause remanded. *Tatlow, P. J.,* and *Smith, J.,* concur.