José García Calderón, Plaintiff and Appellee, *v.* Galiña-
nes Hermanos, Inc., Defendant and Appellant.

No. 12191.    Decided August 15, 1961.

308

Rodríguez Otero, Ramírez & Díaz González and J. Quiñones Elías for appellant. Antonio J. Amadeo and Santos P. Amadeo for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In *Rodríguez* v. *Waterman Dock Co.*, 78 P.R.R. 702, 705 (1955), we said that one of the essential elements of an action for damages for false imprisonment[1] is that the restraint of the plaintiff's freedom shall have been the result of the acts of the defendant advising, inducing, instigating, or requesting the filing of proceedings which will cause the privation of such freedom. The fact alone of furnishing information to a public-peace officer—judge, district, attorney, or policeman— on certain facts does not constitute, by itself, the instigation which is essential as an element of the action. *Jiménez* v. *Sánchez*, 76 P.R.R. 347 (1954) ; *Torres* v. *Mar-*

---

[1] The cause of action claiming damages for false imprisonment does not necessarily require that the aggrieved party be imprisoned. It is necessary that there be some form of actual detention or restraint, of plaintiff's liberty without his consent, and for appreciable time. I Harper and James, The Law of Torts 226, § 3.7 (1956). Nor is it necessary that there be violence. *Gust* v. *Montgomery Ward & Co.*, 136 S.W.2d 94 (Mo. 1939) ; *Talcott* v. *National Exhibition Co.*, 128 N.Y. Supp. 1059 (1911), unlike the action for malicious persecution, the initiation of judicial proceedings resulting in an arrest is not necessary.

*cano*, 68 P.R.R. 813 (1948). It is necessary that there be a malicious imputation, made in bad faith and without reasonable basis, but an affirmation or assertion based on a reasonable belief does not entail any civil responsibility. *Jiménez* v. *Sánchez, supra; cf. Casanovas* v. *González Padín Co.*, 47 P.R.R. 461, 470 (1934); Note, *False Arrest-Standard of Care of Informant*, 22 Tenn.L.Rev. 1070 (1953); *cf. Motive as an Essential Element of the Crime of False Imprisonment*, 38 Dick. L. Rev. 184 (1934). Otherwise, the procedure of investigation by the competent authorities aimed at clarifying the truth for the purpose of exacting responsibility where it is proper, would be hampered. On the responsibility of a citizen for the false imprisonment of another person by a public peace officer, see annotation in 21 A.L.R.2d 643 (1952).

With this brief exposition of the principles governing actions for damages for false imprisonment, let us examine the facts in the instant case as they appear from the findings of the trial court:

"Early in the morning of Sunday, December 18, 1955, the plaintiff left a family party where he had taken several drinks. At the place known by 'Tres Palmas' in Bayamón, he was joined by three young ladies with whom he went to 'El Nilo' Restaurant at Stop 22, Santurce, owned by the defendant, where they asked for and drank four glasses of vermouth. The plaintiff asked the waiter how much was the bill, and when the latter answered that it was two dollars, the former wrote out a check for three dollars and handed it to the waiter with the intention that the defendant would tip the waiter one dollar. The waiter went over to the cashier and returned to the table saying that they would not accept the check. The plaintiff approached the cashier and asked him why they would not accept the check, to which the latter answered that he did not accept checks but only cash. The plaintiff identified himself and explained that he did not have any cash with him at that moment, assuring him that he had sufficient funds in the bank, which was true. He engaged in a heated argument with Edgar Galiñanes, night manager of the restaurant. In the meantime, the young ladies who accompanied the plaintiff went out of the premises and left.

"A policeman arrived at the establishment and Galiñanes informed him that the plaintiff had consumed liquor and did not want to pay. The plaintiff protested alleging that he wanted to pay by check and, since Galiñanes had torn the check drawn by the plaintiff, the latter offered another one. The defendant having refused this new offer, the policeman conducted the plaintiff and the waiter of the establishment to the police headquarters at Stop 19, Santurce. Although the plaintiff's car was parked nearby, he was taken to the headquarters in a police car. The plaintiff, being deprived of his freedom, asked the policeman on the way to take him before a judge. Upon arriving at the headquarters and in the presence of a police corporal, the plaintiff again protested and offered to make a check for $100 to guarantee the payment of the liquor consumed in 'El Nilo.' There he called a judge by telephone, and after that telephone conversation the corporal told the plaintiff that he could go. The following Monday the plaintiff mailed to the defendant a certified check for $3, which had not been returned to him."

■■ It appears offhand that the judge of the trial court merely determined (*a*) that a policeman arrived at defendant's establishment, without concluding in any manner whatever whether such policeman was called or whether his presence was required by Galiñanes;[2] (*b*) that the cashier merely informed the policeman of the incident with the plaintiff; and (*c*) that after hearing the accounts of the parties involved in the unpleasant incident, the policeman conducted the plaintiff and the waiter to the headquarters at Stop 19 for investigation. There is no doubt that the recital of the facts which the cashier made to the policeman was true as to the substantial facts, namely, the consumption of liquor

---

[2] In the absence of a finding by the trial court on this point, we are at liberty to formulate our conclusion. Having weighed the evidence as a whole, we believe that Galiñanes did not request the presence of the policeman, but that the agent happened to drop in the establishment to have breakfast before carrying out that day an order to pick up one of his superiors and take him to Isla de Cabra. This is corroborated by the fact that, despite the fact that he conducted the plaintiff to the headquarters, he absented himself immediately from the investigation in order to arrive promptly at 6:00 a.m., to carry out his order.

by the plaintiff in the establishment, nonpayment in cash, the cashier's refusal to accept the check drawn or which the plaintiff offered to draw, alleging that this was the policy of the establishment. On the other hand, the judge did not conclude that the action of the policeman in conducting the plaintiff to the headquarters obeyed instructions or insinuations of defendant's agent.

In the conclusions of law of the trial court it is said that, "since in this case the plaintiff did not commit any wrongful act, the privation of his freedom in conducting him to the police headquarters was illegal." However, this does not necessarily entail responsibility on the part of the defendant, unless it had been shown that it was its employee who actually called the public peace officer in order to obtain such restraint of freedom. But, as we have seen, there is no determination on this point despite the fact that the plaintiff in his testimony insisted repeatedly that the cashier had sent for the police. Furthermore, should we uphold the position of the trial judge, we would in fact be deciding that in any case in which a citizen complains or relates to a public peace officer certain facts which may constitute an offense, he would be responsible for the consequences of summoning such person for investigation. On the other hand, assuming that in the instant case the plaintiff did not commit any violation of the law,[3] it is not less true that he could not demand that the check be accepted in payment of the liquor consumed.[4]

In *Gogue* v. *MacDonald*, 218 P.2d 542 (Cal. 1950), the situation of facts presented was more serious than that under

---

[3] See § 475 of the Penal Code (33 L.P.R.A. § 1821) and § 537 of the Penal Code of California (West, Annotated California Codes, p. 829).

[4] The trial court concluded that "it is the general policy of an establishment such as that of the defendant to accept payment by check, particularly where the amount is small and the patron issuing the check identifies himself duly." There is no evidence on this point in the transcript and, in the absence of any, the judge was precluded from making such finding. The evidence introduced supports a different finding, for, if anything was firmly established, it was that checks are not honored in defendant's establishment.

consideration: the defendant complained before a peace judge that the plaintiff had removed his belongings from a cottage which had been rented to him, without paying in advance the rent due; the judge prepared a complaint against the plaintiff for violation of § 537 of the Penal Code of California and issued the proper warrant of arrest, which was carried out; he was unable to furnish bail and was detained in jail for some time. Thereafter it was determined that the facts alleged by the defendant did not constitute any offense. In dismissing the action for damages based on the foregoing facts, the court said that civil responsibility did not lie in the absence of allegation and proof of malice in reporting the facts which gave rise to the complaint. The court further said, "he is not liable merely because the facts he stated to the magistrate do not constitute a public offense." See, also, *Hughes* v. *Oreb*, 228 P.2d 550, 553 (Cal. 1951); *Peterson* v. *Robinson*, 277 P.2d 19, 23 (Cal. 1954); *J. C. Penney Co.* v. *Reynolds*, 329 S.W.2d 104, 107 (Tex. 1959).

In view of the foregoing, the judgment rendered by the Superior Court, San Juan Part, on December 3, 1956, is reversed.